Edward Thompson, J.
Defendant Soto moves, on written papers, in which defendant Gabbidon orally joins, to suppress the knife allegedly used by one or both of the defendants in the commission of a homicide. The testimony herein reveals as follows;
*220 On May 21, 1966 at 12:30 a.m. Patrolman Donovan, while on foot patrol in the bus terminal, Jamaica, Qneens, observed the defendant Gabbidon flee from the vicinity of a prostrate person, later identified as the victim of a fatal stab wound. Donovan pursued him and apprehended him some 50 feet away in the outside passenger loading area which adjoins Merrick Boulevard. Some 10 minutes later, while this officer proceeded to the station house with Gabbidon, a witness pointed out a pedestrian who was walking north on Merrick Boulevard, across the street from a mailbox, as the other man involved in the killing. The afore-mentioned passenger loading area of the Jamaica Bus Terminal is located on Merrick Boulevard. The other man, now known as the defendant Soto, was thereupon taken into custody. At the station house the defendant Soto informed the police that he stabbed the victim with a knife and deposited the knife in said mailbox. At 2:15 a.m. said mailbox was opened by the postal authorities upon the request of the police; this after the defendant Soto re-enacted the alleged crime in the presence of the police and an Assistant District Attorney.
No constitutional warnings as required by the subsequently adopted Miranda rule were afforded either of the defendants and thus, as a matter of law, the physical evidence becomes tainted. Further evidence revealed, however, that upon arrival the police immediately commenced and thereafter continued a search for the weapon in the areas immediately adjoining the situs of the homicide and terminated the same only upon the discovery of the knife as afore-mentioned. The mailbox in question which was located on the southeast corner of 90th Avenue and Merrick Boulevard was emptied at approximately 8:00 p.m. on May 20 and was scheduled to be next emptied by postal officials at 7:59 a.m. on May 21. Too, said mailbox was situate 125 feet from the scene of the homicide. Pursuant to postal regulations, any foreign object such as the knife in question, would be seized, held by supervising postal authority and turned over to police for their further investigation.
The movants contend that the knife in question is “ fruit of a poisonous tree ” and that as such it should be suppressed. They further contend that any connection of the defendant with said knife resulted from an exploitation of the primary illegal act.
The authorities now are legion that evidence acquired as the result of a tainted confession must be suppressed. However, since 1920 when this principle of law was expounded by Mr. Justice Holmes in Silverthorne Lbr. Co., v. United States (251 U. S. 385, 392), other authorities have recognized that improp *221 erly obtained evidence does not become “ sacred and inaccessible. If knowledge of them is gained from an independent source ”. (Nardone v. United States, 308 U. S. 338; Smith v. United States, 324 F. 2d 879; People v. Scharfstein, 52 Misc 2d 976 [1967].) As propounded in People v. Robinson (13 N Y 2d 296) suppression must obtain if said illegal evidence is exploited and only then.
Upon the evidence adduced at this hearing, I find as a fact that the continued search by the police would have led to a discovery of the existence and location of the knife at or shortly after 8:00 a.m. on May 21. I find as a further fact that up until the time the police retrieved the knife a hot pursuit and search for such weapon was in progress, and were it not for the tainted admission of the defendant Soto, said hot pursuit and search would have resulted in its discovery by virtue of normal events and police investigation. The application of common sense to a given situation must be applied in all directions for as was said in Smith v. United States (324 F. 2d 879, 882 [1963]) “ the people of the state are also entitled to due process of law.” Thus, the suppression of the knife for the reason that its location came from a tainted source is denied.
The second branch of the movants’ contention, that the defendant Soto’s connection with said knife could result only from exploitation of the tainted admission, is not a matter to be decided upon this hearing. Once the existence and location of the knife could have been ascertained by other and legal evidence than the defendant’s tainted admission, opportunity must be granted the prosecution to establish circumstances on the trial adequately and sufficiently connecting either defendant with the knife. With respect to these matters the defendants are protected by the rules which govern practice of criminal trials concerning the admission or no of any item into evidence. Motion denied in all respects.