No. 45,141

STATE OF KANSAS, *Appellee,* v. GEORGE LEKAS, *Appellant.*

(442 P. 2d 11)

Opinion filed June 8, 1968.

*Donn J. Everett,* of Manhattan, argued the cause and was on the brief for the appellant.

*John C. Fay,* County Attorney, argued the cause, and *Robert C. Londerholm,* Attorney General, was with him on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is a criminal action in which George Lekas was convicted of having a .22 caliber revolver in his possession and under his control, contrary to K. S. A. 21-2611, "after having been convicted of burglary in the second degree . . . and robbery in the first degree." He was sentenced under the habitual criminal act (K. S. A. 21-107a) on the basis of one prior felony conviction, the prior felony asserted being the robbery conviction alleged in the information.

Appeal has been duly perfected to this court.

The questions on appeal stem from whether the appellant was afforded proper constitutional safeguards in procuring evidence presented at the trial and upon which his conviction was based.

The appellant has attempted to enlarge the scope of this appeal by amending his specifications of error to challenge whether he was properly sentenced under the habitual criminal act, the prior felony asserted being one specifically set forth in the information. This motion has been denied on the ground that the point raised is immaterial to a decision in the case. (But see, *State v. Ware,* No. 45,102, this day decided.)

The facts material to a determination of this appeal are uncontroverted.

On the 27th day of March, 1967, George Lekas (defendant-appellant) was on parole after serving several years at the Kansas State Penitentiary on a charge of first degree robbery. He was under the direct supervision of the local representative of the Kansas State Board of Probation and Parole in Riley County, Kansas. His parole officer, Earl Dreher, had received information that the appellant was planning to leave town—that he had drawn his money out of the bank and had quit his job or had been fired. Accordingly, the parole officer on the 27th day of March, 1967, made arrangements for a police officer to meet him at the home of the appellant at 10:30 a. m.

Upon the arrival of the uniformed police officer in his police automobile at the appellant's residence, the parole officer and the police

officer knocked at the door of the appellant's home. The appellant's mother came to the door and let the officers in. The appellant had been lying on his bed and had just gotten to his feet when the officers entered the home. The parole officer went to the appellant's bedroom and there observed some bullets lying on the dresser. Whereupon, he asked the appellant if he had a gun. The appellant responded that he did not have one.

The police officer and the parole officer then took the appellant to the police car and drove him to the Riley County courthouse where the appellant was questioned by the parole officer in his office. During this interrogation the police officer was not present. In the course of the interrogation the appellant admitted to the parole officer that he did have a pistol in his possession.

The parole officer testified that he did not at any time give the appellant the *Miranda* warning.

While the appellant was in the office of the parole officer in the courthouse, the undersheriff came in to question the appellant on a forgery charge. Prior to such questioning, however, the under-sheriff did give the appellant the *Miranda* warning. No inquiry was made of the appellant at that time concerning the appellant's possession of a pistol.

The undersheriff then talked to the parole officer and learned of the appellant's admission concerning the pistol. He thereupon procured a search warrant in the county court to look for the weapon. The only source of information upon which the under-sheriff signed the affidavit to procure the search warrant came from the parole officer.

The sheriff of Riley County then joined the undersheriff, and with the appellant in their custody they drove to the home of the appellant. Enroute they presented the search warrant to the appellant and advised him of his constitutional rights as required by the *Miranda* decision. The appellant was informed they were advising him of his rights relative to an inquiry concerning the possibility of his possession of a pistol. Upon interrogation by the sheriff the appellant then admitted that he had a pistol in his possession.

Upon arriving at the appellant's home it was learned the appellant's mother was visiting at the home of the appellant's grandmother. The officers then proceeded to the grandmother's home with the appellant, where the sheriff informed the appellant's

mother they had a search warrant; that they had information the appellant had a weapon; and that they had come to pick up the weapon.

While in the custody of the officers at the grandmother's residence, the appellant said, " 'mom, it's O. K., I have already told them I have one, I have a gun.' "

The appellant's mother told the officers there was no sense in going to the appellant's room to look for the pistol because she said, " 'I have it here in my purse and I removed it from under his pillow.' "

In the trial of the case the foregoing admissions made by the appellant concerning his possession of the pistol were all received in evidence over the appellant's objection. The pistol was likewise received in evidence over the appellant's objection. At all points throughout the trial of the case and in post trial motions counsel for the appellant challenged the admissibility of such evidence, thereby squarely presenting the questions hereinafter discussed.

The appellant first contends it was error to admit into evidence his statement to the parole officer that he did have possession and control of the pistol, the statement having been made to the parole officer without any prior warning as to his constitutional rights.

It should be emphasized the issue here presented is not whether the appellant's parole can be revoked after the appellant confesses to the parole officer concerning a new crime, without first having been informed of his constitutional rights. (See, K. S. A. 62-2237.) Here the incriminating statements admitted in evidence were used to convict the appellant for a new offense. This is the issue confronting the court.

Under the foregoing circumstances the question, simply stated, is whether the requirements of *Miranda v. Arizona*, 384 U. S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A. L. R. 3d 974, apply to interrogation made by an officer of the Kansas State Board of Probation and Parole.

K. S. A. 62-2235 sets forth the powers and authority of the Kansas State Board of Probation and Parole. In pertinent part it provides:

". . . and all persons employed under the provisions of this act as probation or parole officers shall have and exercise police powers to the same extent as other peace officers and such powers may be exercised by them anywhere within the state: . . ."

In the instant case the appellant was confronted by his parole

officer and a police officer of the city of Manhattan, Kansas. He was taken into custody and transported to the county courthouse in a police car where the interrogation commenced. This meets the first test of *Miranda* as to whether the appellant was in custody. In *Miranda v. Arizona*, supra, the court stated:

"Our holding will be spelled out with some specificity in the pages which follow but briefly stated it is this: the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. . . ." (p. 444.)

Further in the opinion the court stated:

"At the outset, if a person in custody is to be subjected to interrogation, he must first be informed in clear and unequivocal terms that he has the right to remain silent. . . ." (pp. 467, 468.)

As we construe the *Miranda* decision, if the incriminating statements elicited from the appellant while in custody by the parole officer upon interrogation were to be used for the prosecution of a new offense, the parole officer was required to give the *Miranda* warning. Under 62-2235, *supra*, the parole officer in Kansas is a law enforcement officer the same as other peace officers in the state.

The *Miranda* requirements were held applicable to an investigating revenue agent for the government in *Mathis v. United States*, 36 U. S. L. Week 4379 (U. S. May 6, 1968), where the accused, when questioned, was in jail on an entirely separate offense, even though the questions were asked as a part of a routine tax investigation. In *People v. Arnold*, 66 C. 2d 433, 58 Cal. Rptr. 115, 426 P. 2d 515, it was held for the purpose of applying *Miranda* principles there was no distinction between interrogation by a police officer and interrogation by a prosecuting attorney.

In *Miranda* the court said:

"Today, then, there can be no doubt that the Fifth Amendment privilege is available outside of criminal court proceedings and serves to protect persons *in all settings* in which their freedom of action is curtailed in any significant way from being compelled to incriminate themselves. We have concluded that without proper safeguards the process of in-custody interrogation of persons suspected or accused of crime contains inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely. In order to combat these pressures and to permit a full opportunity to exercise the privilege against self-

incrimination, the accused must be adequately and effectively apprised of his rights and the exercise of those rights must be fully honored." (p. 467.) (Emphasis added.)

The requirements of the *Miranda* decision are that:

". . . Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. . . ." (p. 444.)

A situation somewhat analogous to the instant case is presented when a person is suspected of committing a crime inside the walls of a state penitentiary.

After the case of *Escobedo v. Illinois,* 378 U. S. 478, 12 L. Ed. 2d 977, 84 S. Ct. 1758, and before the *Miranda* decision, the state of California held that one imprisoned at San Quentin was required to waive his constitutional right to remain silent and to counsel prior to interrogation, if incriminating statements made during the course of such interrogation were to be used as evidence against him in a court of law. (*People v. Dorado,* 62 C. 2d 338, 42 Cal. Rptr. 169, 398 P. 2d 361.)

We hold the *Miranda* decision places a duty upon the officers of the Kansas State Board of Probation and Parole, when they are investigating the commission of a fresh or new felony by a parolee, to comply with the mandate in *Miranda,* if the incriminating statements they elicit from a parolee are to be admissible as evidence in the prosecution of the new offense. On the facts in this case the incriminating statements made by the appellant to the parole officer were inadmissible in evidence.

In a situation of this kind the truth of the incriminating statements is immaterial. (See, *State v. Milow,* 199 Kan. 576, 433 P. 2d 538.)

Does the incriminating statement made by the appellant to the parole officer ripen into a legal admission (one admissible in evidence) where the appellant has subsequently been advised of his constitutional rights and again makes the same incriminating statement?

It should be borne in mind that the interrogation of the appellant by the parole officer in his office at the Riley County courthouse took place within a short period of time prior to the issuance of the search warrant and the subsequent incriminating statement or second admission made by the appellant.

The appellant contends the second period of interrogation, preceded by the *Miranda* warning given by the sheriff, renders the second admission of the appellant void and inadmissible in evidence under the "fruit of the poisonous tree" doctrine.

Whether the incriminating statements made by the appellant, as heretofore disclosed, be termed admissions or confessions is immaterial in this case in that the same rules apply in either event. We have referred to the incriminating statements made by the appellant as admissions because the possession or control of a pistol by an individual is not, in and of itself, an offense under the criminal laws of this state. An element of proof where one is charged with such offense is that he must, prior thereto, have been convicted of one of the offenses enumerated in the statute. (K. S. A. 21-2611.) For purposes of further discussion we shall use the terms "admissions" and "confessions" interchangeably.

*Westover v. United States,* 384 U. S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A. L. R. 3d 974, is a companion case to the *Miranda* decision and has been cited by courts subsequent thereto for the proposition that the safeguards set forth in *Miranda* must be articulated by the interrogating officer prior to any questioning or at the outset of the interrogation process. (*Tucker v. United States,* 375 F. 2d 363 [8th Cir. 1967].) *Westover* reveals that a confession obtained by one authority after proper warning may be invalid and inadmissible in evidence for failure of the first interrogating authority to timely and fully advise the person in custody of his constitutional right against self-incrimination.

In the opinion as to *Westover* the court said:

". . . At the time the FBI agents began questioning Westover, he had been in custody for over 14 hours and had been interrogated at length during that period. The FBI interrogation began immediately upon the conclusion of the interrogation by Kansas City police and was conducted in local police headquarters. Although the two law enforcement authorities are legally distinct and the crimes for which they interrogated Westover were different, the impact on him was that of a continuous period of questioning. There is no evidence of any warning given prior to the FBI interrogation nor is there any evidence of an articulated waiver of rights after the FBI commenced its interrogation. The record simply shows that the defendant did in fact confess a short time after being turned over to the FBI following interrogation by local police. Despite the fact that the FBI agents gave warnings at the outset of their interview, from Westover's point of view the warnings came at the end of the interrogation process. In these circumstances an intelligent waiver of constitutional rights cannot be assumed." (pp. 495, 496.)

In *Evans v. United States,* 375 F. 2d 355 (8th Cir. 1967), the defendant was interrogated at police headquarters by a police officer without being fully advised of his constitutional rights, and was again interrogated three days later at the city jail by a postal inspector in the presence of the same officer, after being fully advised of his constitutional rights. The court held the totality of the circumstances tainted and infected the subsequent confession to the inspector with the poison of the prior unconstitutional confession to the officer and rendered its admission in evidence reversible error.

In *Leyra v. Denno,* 347 U. S. 556, 98 L. Ed. 948, 74 S. Ct. 716, it was held that the coercive character of the first confession controlled the character of the subsequent confessions, all being parts of one continuous process.

In *Bunting v. Commonwealth,* 208 Va. 309, 157 S. E. 2d 204, it was held that a confession obtained by such methods as to make it involuntary renders subsequent confessions, made while the accused is under the operation of the same influence, also involuntary and inadmissible in evidence.

In *Commonwealth v. White,* 232 N. E. 2d 335 (Mass. 1967), three confessions by the accused were involved. The first two were suppressed upon motion, but the motion as to the third was denied. Under the particular circumstances disclosed by the facts in that case the court held it could not be said as a matter of law that the third confession was the fruit of the others. In the opinion the court discussed the application of, and noncompliance with, *Miranda* rules. There the court said rather than an automatic presumption of illegality in the case of consecutive confessions where an earlier confession is invalid, the test is whether the later confession is voluntary.

Another decision in which a subsequent confession was held inadmissible is *Jackson v. United States,* 273 F. 2d 521 (D. C. Cir. 1959). There the defendant signed a written confession prepared on the basis of his earlier oral admissions, and it was held the signed confession was not admissible even though it was signed after judicial caution had been imparted, since the defendant's signing of the document could not be considered an independent act based upon proper counsel, or as occurring after the time for deliberate reflection, but rather was obtained as a result of a purposeful process of inquiry undertaken during a period of unlawful detention.

A lucid articulation of the reasoning for the rule, that a confession is inadmissible where it is the tainted fruit of a prior illegally obtained confession, was made by Judge J. Skelly Wright in a concurring opinion in *Killough v. United States*, 336 F. 2d 929 (D. C. Cir. 1964). There it was his opinion that without the illegally obtained confession, it was clear beyond cavil that no admissions of any kind would have been made by the accused upon subsequent interrogation. He stated:

". . . The reason for this rule is obvious. A prisoner, finally broken by persistent police interrogation, has, in his own mind at least, already committed himself to the tender mercies of a sentencing court through a plea of guilty. A prisoner whose mechanisms of resistance are subdued by defeat and the apparent futility of further combat is in no position to exercise any rights he may have with respect to further interrogation by Government functionaries, particularly when he does not even know that an illegally abstracted confession is not admissible against him and that the law, in spite of the confession, still offers him protection against further self-incrimination.

"This then was the situation which presented itself to Killough when he was interviewed by the Prison Classification Intern. Having already confessed twice within a period of 24 hours, he was ready to confess some more. . . .

⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅

"It seems to me that this court should clearly state that where a confession is illegally obtained in violation of Rule 5 (*a*), F. R. Cr. P., subsequent confessions, however or by whom abstracted, are likewise inadmissible unless the Government convincingly demonstrates the absence of connection with the prior illegal confession. In presenting this proof, the following considerations, among others, are most important: (1) *Did the defendant have the advice of counsel subsequent to the illegally obtained confession?* (2) What was the time interval between the confessions? (3) Was the defendant admitted to bail during that interval? While, as indicated, these considerations are not exclusive, they certainly provide the primary avenues of inquiry in determining whether the subsequent confession resulted from the illegally obtained one." (p. 936.)

The foregoing reasoning is persuasive, and we hold where a confession is illegally obtained in violation of the mandate of *Miranda*, subsequent confessions, however or by whom abstracted, are likewise inadmissible unless the state convincingly demonstrates the absence of connection with the prior illegal confession. In the instant case the time intervening between the confessions was probably less than an hour; the appellant was in custody and was deprived of his freedom of action in a "significant way;" he had not been admitted to bail; and he had no opportunity to consult with counsel. Having once confessed to the parole officer after he was taken into custody, the appellant, even though subsequently advised

of his constitutional rights by the sheriff and the undersheriff of Riley County, was ready to confess some more. We hold as a matter of law on the facts in this case the subsequent confession by the appellant was inadmissible in evidence because it was the tainted fruit of the illegally obtained confession extracted by the parole officer from the appellant less than an hour before. The illegally obtained confession did not ripen into a legal confession by reason of the subsequent *Miranda* warning and confession thereafter, but on the contrary, the illegally obtained confession tainted the subsequent confession.

Was the .22 caliber revolver taken from the appellant's mother properly admitted into evidence, where it was secured by the use of a search warrant issued as a result of information obtained from an illegal confession?

The authorities are now legion that evidence acquired as the result of a tainted confession must be suppressed. (*People v. Soto,* 285 N. Y. S. 2d 166, 55 Misc. 2d 219.) This principle of law was expounded by Justice Holmes in *Silverthorne Lumber Co. v. United States,* 251 U. S. 385, 64 L. Ed. 319, 40 S. Ct. 182. Mr. Justice Holmes presented the proposition thus:

". . . .The essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the Court but that it shall not be used at all. Of course this does not mean that the facts thus obtained become sacred and inaccessible. If knowledge of them is gained from an independent source they may be proved like any others, but the knowledge gained by the Government's own wrong cannot be used by it in the way proposed. . . ." (p. 392.)

The applicability of the foregoing doctrine in "search and seizure" cases has been set forth in *People v. Rodriguez,* 11 N. Y. 2d 279, 229 N. Y. S. 2d 353, 135 N. E. 2d 651. Logic and fairness, as well as precedent, have compelled that the same theory be followed in "confession" cases. In *People v. Dannic,* 277 N. Y. S. 2d 331, 52 Misc. 2d 1012, it was said:

"'. . . If the use of a coerced confession against a defendant violates our basic sense of fairness, that sense of fairness is equally violated by the use against the defendant of the "fruits" of his coerced confession'. Richardson on Evidence, 9th Edition by Prince, section 341, citing *People v. Ditson,* 57 C. 2d 415, 20 Cal. Rptr. 165, 369 P. 2d 714." (pp. 332, 333.)

In *State v. Williams,* 432 P. 2d 679 (Or. 1967), the court speaking of the *Miranda* and *Escobedo* cases said:

". . . The Fifth Amendment privilege is recognized in these cases be-

cause its application was deemed necessary as a prophylaxis against coercive police practices. The same prophylaxis is necessary whether the interrogation is used to obtain a confession or to establish a suspect's guilt through his disclosure of evidence pointing to his guilt. In the present case defendant was clearly a focal suspect and he was in the custody of the police. This is the very type of situation in which the prophylactic rule in *Miranda* was intended to apply.

"We hold, therefore, that the trial court erred in admitting the evidence produced by the search and seizure and in admitting the confession which, under the circumstances, cannot be ,disengaged from the previous illegal seizure." (p. 683.)

Other cases expounding the "fruit of the poisonous tree" doctrine are *Wong Sun v. United States,* 371 U. S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407; and *Fahy v. Connecticut,* 375 U. S. 85, 11 L. Ed. 2d 171, 84 S. Ct. 229.

In speaking of the privilege against self-incrimination Justice White, in a concurring opinion in *Murphy v. Waterfront Comm'n.,* 378 U. S. 52, 12 L. Ed. 2d 678, 84 S. Ct. 1594, said:

". . . The privilege can be claimed in any proceeding, be it criminal or civil, administrative or judicial, investigatory or adjudicatory, *McCarthy v. Arndstein,* 266 U. S. 34, 40; *United States v. Saline Bank,* 1 Pet. 100, and it protects any disclosures which the witness may reasonably apprehend could be used in a criminal prosecution *or which could lead to other evidence that might be so used. Mason v. United States,* 244 U. S. 362; *Hoffman v. United States,* 341 U. S. 479. .. . . ." (p. 94.) (Emphasis added.)

While there was no actual search of the appellant's premises in the instant case pursuant to the search warrant issued, the search warrant was used in obtaining the second confession from the appellant, and in gaining possession of the pistol which was later admitted in evidence. Here the pistol in question was secured solely by virtue of the illegal admission made to the parole officer by the appellant, which in turn was transmitted to the undersheriff, who in turn signed the affidavit for the ultimate issuance of a search warrant by the county court of Riley County, Kansas. On the facts in this case, it follows that the pistol produced by the appellant's mother, and later received in evidence, was a "fruit of the poisonous tree." The trial court, therefore, erred in receiving the pistol in evidence.

The judgment of the lower court is reversed.

Price, C. J., dissenting.

KAUL, J. (dissenting): I cannot accept the application of *Miranda v. Arizona,* 384 U. S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A. L. R. 3d 974, to the facts and record of proceedings as presented by the abstract of appellant in this case, therefore I must respectfully dissent.

In the first place my examination of the abstract before us fails to disclose any lucidity as to how the admission, confession or information secured by parole officer Dreher, in his private interview with defendant, was made use of at the trial. In the state's counter-abstract the county attorney states that Dreher was called as a witness for defendant, I am unable to find any assertion to the contrary by defendant. In fact the examination of Dreher by defendant's counsel, as abstracted, indicates that he was defendant's witness. The point is this: Was the so-called confession to Dreher used by the state to secure a conviction or was it introduced by defendant only for the purpose of impeding or obstructing justice? The preparation of an abstract, disclosing the necessary portions of proceedings to support his position, is incumbent upon the defendant-appellant.

I am not saying that a confession obtained by a parole officer, without a proper *Miranda* warning, is admissible for the purpose of proving the state's case. In that regard, I concur with the holding in paragraph three of the syllabus. However, I don't believe that where information secured by a parole officer, while acting in that capacity, in an interview with a parolee which, when subsequently relayed to the proper police authorities, results in securing evidence otherwise legal, that such evidence becomes vicariously poisoned by reason of the mandate of *Miranda* and related cases cited in the majority opinion.

If a criminal defendant can poison a subsequent confession, otherwise legal, or physical evidence (the pistol in this case) by showing that the information from which an investigation is instigated, which may lead to a confession after proper warning, then the effect of the court's decision is to gag a parole officer as to any information he might secure while interviewing a parolee or probationer unless the officer had previously performed the *Miranda* ritual. If such is to be the case, then in my judgment a reevaluation of the risk factor involved in the granting of probation and parole under the excellent parole system of this state will be required.

I have no quarrel with the reasoning of or the mandate pro-

nounced in *Miranda*. However, under the facts in the four cases involved in that decision, as described by Chief Justice Warren, I don't believe the mandate pronounced was ever intended to create a device which could be used to thwart the enforcement of the law as demonstrated in the abstract of proceedings in this case. I would affirm the judgment.