No. 46,867

STATE OF KANSAS, *Appellee*, v. DONALD GROVER GRESS, *Appellant.*

(504 P. 2d 256)

Opinion filed December 9, 1972.

*Michael Lerner*, of Kansas City, argued the cause, and *Anthony R. Russo*, also of Kansas City, was with him on the brief for the appellant.

*Nick A. Tomasic*, chief deputy county attorney, argued the cause, and *Vern Miller*, attorney general, and *F. D. Menghini*, county attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

FROMME, J.: This is a direct appeal from a conviction for murder in the second degree. The charge was under K. S. A. 21-402 (now

K. S. A. 1971 Supp. 21-3402). Appellant was sentenced to the custody of the State Penal Director for a term of fifteen years. The murder victim was appellant's 84 year old grandfather.

The events leading to the prosecution will be highly summarized in view of the points of error to be discussed later. Around 8:00 o'clock p. m. on September 27, 1969, a fire alarm was sent in for 9247 Leavenworth Road in Kansas City, Kansas. The appellant's grandfather, Grover Cleveland Gress, lived alone at this rural address. The residence was destroyed by the fire and the firemen discovered the badly charred body of appellant's grandfather in the ashes of his home. The body bore marks of an apparent shotgun blast.

Police officers were summoned and they began an investigation into the homicide. In the course of the investigation a pickup order was issued for the grandson of the victim and his vehicle. Shortly before noon the next day the grandson and some companions arrived at the scene of the fire and inquired as to what had happened. A deputy sheriff asked the appellant-grandson if he would accompany the officer to the courthouse to help him make out a report. The appellant agreed and accompanied the officer without being advised of the issuance of the previous pickup order and without being advised that he was under arrest. The officer stated that the appellant-Gress was not a suspect at this time but that he was in custody and would have been restrained if he had attempted to leave without answering questions.

Two separate periods of interrogation followed at the police station. The first interrogation was without a Miranda warning. (See *Miranda v. Arizona*, 384 U. S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A. L. R. 3d 974.) It lasted twenty-four minutes and at the end of that period of time the warning was given. Thereafter the interrogation continued and this period of the questioning will be referred to as the second interrogation. Eventually around midnight that same evening a confession on which the conviction rests was signed by appellant.

Appellant raises three points of error. His principal contention is that the trial court erred in overruling his motion to suppress the confession. We will consider this point of error first.

Although there is some confusion in the record it appears from testimony given by Captain Hall and Agent Purdy that when the warning was eventually given the warning of rights was sufficient

under the Miranda guidelines. Captain Hall testified, "I advised the man that he had the right to remain silent; that he had the right to the services of an attorney; that any statement he made could be used against him in a court of law; that if he could not afford an attorney that one would be appointed for him." This explanation appears to have been elicited both on a motion to suppress and during the trial of the case.

The Miranda opinion, requiring a proper warning or advice of rights, applies to both admissions and confessions. (*State v. Phinis*, 199 Kan. 472, 475, 430 P. 2d 251; *State v. Lekas*, 201 Kan. 579, 587, 442 P. 2d 11.) A confession obtained after a Miranda warning may nevertheless be inadmissible in evidence as "fruit of the poisonous tree" if it is the product of earlier statements obtained by interrogation without the necessary advice of constitutional rights. (*State v. Lekas*, supra.)

However, a prior custodial interrogation without the Miranda warning does not automatically render subsequent in-custody statements made during a later interrogation inadmissible when the later statements are made after a proper warning of rights, for it is only when the subsequent statements or confession are a product of the earlier impermissible interrogation that the "fruit of the poisonous tree" doctrine is applied. The facts, circumstances and the interrelationship of separate interrogations must be examined to determine whether there is sufficient causal relationship between them to render the subsequent statement a product of the earlier impermissible interrogation. (*Harney v. United States*, 407 F. 2d 586 [1969]; *Westover v. United States*, 384 U. S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A. L. R. 3d 974; *Commonwealth v. Frazier*, 443 Pa. 178, 279 A. 2d 33; *State v. Lekas*, supra.)

A further detailing of the facts surrounding the interrogations is necessary to determine if the confession was a product of the earlier twenty-four minute interrogation carried on without adequate warning. During this first twenty-four minutes at the police station, from 12:30 p. m. to 12:54 p. m., appellant was asked his name, age and address. In addition, with reference to the night of the fire, he was asked the names of the people he was with, the kind of car he was driving, where he had gone and who could verify his whereabouts. On cross-examination Agent Purdy testified these latter questions were asked to determine whether appellant had an alibi for the afternoon and evening of the fire. During the

interrogation two of appellant's companions were also being questioned by other officers. It appeared to the officers during the initial questioning that appellant's alleged companions were not giving their correct names. It also appeared that appellant had not been in Topeka with them on the afternoon and evening of the fire, as appellant had stated. It was at this time that the officers gave the appellant the Miranda warning.

Thereafter, the interrogation continued from 12:54 p. m. to 3:45 p. m. and the appellant iterated the events of the afternoon and evening, consistently maintaining that he had not been to his grandfather's house. Instead, he stated he had spent the evening in Topeka. At 3:45 p. m. without having changed his story, appellant was taken to jail where he remained until approximately 9:30 p. m. In the meantime the services of a polygraph (lie detector) operator were secured and appellant was returned to the courthouse. He submitted to a polygraph examination. Shortly after this examination the appellant completely changed his story and gave the officers a written statement and confession on which his conviction now rests.

The prosecution contends that the preliminary interrogation was prior to the decisive stage, that the officers were merely engaged in the fact finding process to determine if a crime had been committed. The appellant, on the other hand, contends the interrogation was an attempt to break down his alibi and prepare for the prosecution. As we view the facts and circumstances the initial interrogation went beyond general questioning to obtain background information.

The police are permitted to ask an accused who is under arrest some general background questions before it is necessary to give the Miranda warning. See *People v. Hernandez*, 263 C. A. 2d 242, 69 Cal. Rptr. 448; *Sciberras v. United States*, 380 F. 2d 732; *State v. Rassmussen*, 92 Idaho 731, 449 P. 2d 837; *Clarke v. State*, 3 Md. App. 447, 240 A. 2d 291. Questions which seek to determine name, address, age, occupation and place of employment are of such a nature. It appears clear, however, in this case that the officers inquired into not only the background facts but also the merits of appellant's alibi. Therefore, it is necessary for us to determine whether the final confession was a product of the earlier statements made during the initial interrogation.

After studying the facts and circumstances surrounding the two periods of interrogation, we conclude the confession was not a prod-

uct of the earlier interrogation. Appellant was a grandson of the victim. Normally he would not be viewed as a suspect. He would ordinarily have information concerning his deceased grandfather which could aid in the investigation. Several persons were being questioned simultaneously. It was not until the investigation began to focus on appellant that the Miranda warning had to be given. This exact time is not apparent from the record. The appellant made no incriminating statements prior to the Miranda warning and he continued thereafter to give the same answers to the questions. The exculpatory alibi was given by appellant both before and after the warning. It was not introduced into evidence at the trial. Since no inculpatory statement or confession was given by the appellant during the initial interrogation, the case of *State v. Lekas,* supra, is readily distinguishable. Where the initial interrogation elicits no inculpatory admissions there can be no pressure on the suspect to repeat and enlarge upon the same at a subsequent interrogation which is preceded by a Miranda warning. After considering the facts, circumstances and extent of these separate interrogations we find no causal relationship between them which would render the subsequent confession, made more than nine hours after the Miranda warning was given, a product of the earlier impermissible interrogation. The confession appears independent and free from any influence of the initial questioning. Accordingly the motion to suppress the confession was properly overruled.

The appellant contends his attorney was erroneously refused permission to freely confer with a material witness, Joy Wilcox, in advance of trial.

An attorney for an accused has a right to interview witnesses held in custody prior to trial without the prosecutor being present. Witnesses are not parties and should not be partisans. The defendant has not only the right to compulsory process for obtaining witnesses to testify in his behalf but also the right, either personally or by attorney, to ascertain what their testimony will be. (K. S. A. 1971 Supp. 7-125, DR 7-109; *Gregory v. United States,* 369 F. 2d 185 [1966]; *Commonwealth v. Balliro,* 349 Mass. 505, 209 N. E. 2d 308; *State v. Berstein,* 372 S. W. 2d 57 [Mo.], cert. den. 376 U. S. 953, 11 L. Ed. 2d 972, 84 S. Ct. 970.) However, reasonable restraints may be imposed by a court to assure the personal safety of a witness in legal custody and to prevent unnecessary annoyance or embarrassment to a witness and undue demands and hardship upon

the persons in whose custody the witness remains. (14 A. L. R. 3d 652 anno.; ABA Standards for Criminal Justice, Discovery, § 2.5, § 4.1; Id. The Defense Function, § 4.3 [d].) In the present case appellant's contention is without substance for several reasons.

Joy Wilcox was with appellant at the time of his arrest. She testified at the preliminary hearing. Appellant's attorney then took her deposition. She left the state and was not available as a witness during the first trial which ended with a hung jury. However, she did keep in touch with the defense attorney by telephone both during and after the trial.

The witness was then charged with being an accessory after the fact in the Gress murder and she was brought back to Kansas. The defense attorney interviewed her on at least one occasion thereafter while in custody and unable to make bond. The attorney obtained an order from the trial judge granting him permission to interview the witness. This interview was conducted in the company of an independent observer appointed by the court, Mr. John Fisette. When the second trial commenced the defense attorney again sought to interview Miss Wilcox. He was informed by the jailer that such an interview would have to be in the presence of her court appointed attorney, Phil Sieve.

Although appellant's attorney states that the court refused to permit interviews, the record does not support his contention. Under the record it appears appellant's attorney was permitted reasonable access to the witness for he not only interviewed her but also took her deposition. She testified at the preliminary hearing. The contention is without substance. (See *State v. Clark*, 125 Kan. 791, 796, 266 Pac. 37.)

Appellant's final claim of error relates to the failure of the trial judge to declare a mistrial on the basis of the prosecutor's reference during his closing argument to a polygraph examination administered to appellant. No attempt was made during the trial to introduce testimony on the results of the test or the opinions of the expert who administered the same. In *State v. Lee*, 197 Kan. 463, 419 P. 2d 927, cert. den. 386 U. S. 925, 17 L. Ed. 2d 797, 87 S. Ct. 900, reh. den. 386 U. S. 978, 18 L. Ed. 2d 142, 87 S. Ct. 1170, it was said:

". . . The result of the lie detector test was not admissible as evidence under the decisions of this court and any reference thereto on the part of the state or its witnesses would have constituted error under the circumstances. [Citing authorities.] . . ." (p. 464.)

Reference to the polygraph examination was made three times during the trial. Detective Monchil testified that appellant had been interviewed by another officer and was asked, "All right, do you know who this other officer is?" He replied, "He was a polygraph examiner for the Kansas City, Missouri, Police Department." No objection was made. Captain Hall was asked when he had next seen appellant after the first interview ended at 3:45 p. m. The following ensued:

"A. It was late Sunday evening when we had him brought from the jail to take a polygraph examination.

"Q. All right. Now, from 12:45 to 3:45 until you brought him from the jail for this examination, was anyone interviewing him?

"A. Not to my knowledge, no, sir.

"Q. Well, do you know?

"A. Not to my knowledge, no, sir, I don't think so. I don't recall assigning anyone to interview him.

"Q. About what time did you take him out of the jail for this examination?

"A. I don't recall the exact time, Mr. Menghini, but it was late that evening."

At this point appellant objected. The court thought it should caution the witness against revealing the result of the polygraph examination. Appellant's counsel asked that the witness not be cautioned because this would merely focus the jury's attention on the fact that the polygraph examination was given. Later, appellant requested an instruction be given covering polygraph tests. The following instruction was given.

"You are instructed that there has been certain testimony presented which would indicate that a polygraph test, more commonly referred to as a lie detector test, was given to the defendant herein, the results of which have not been given by the testimony. In this regard, you are instructed that the results of such a test are inadmissible as evidence, and you are directed not to speculate or consider the possible result of said test in arriving at your decision in this case."

In his closing statement the county attorney commented on the examination, as follows:

"Then the officers said they didn't bother him until later on that night when they ran this examination on him, and after the examination he said, 'I'm ready to give a statement now,' and he gave this statement, and you take it up to your jury room and read it."

Appellant then made his motion for a mistrial.

In this case the results of the test were not referred to in any of the statements. The prosecutor's remark upon which the motion

for mistrial is based referred to an "examination" but did not expressly refer to a polygraph or a lie detector. However, as appellant argues the jury might well infer from the proximity of the examination and the confession that the examination results were unfavorable. The trial court sustained all objections made by the appellant and instructed the jury not to speculate or consider the possible result of said test in arriving at a verdict. In *State v. Smith*, 187 Kan. 42, 353 P. 2d 510, a similar contention was made and rejected when it appeared the jury had been properly admonished not to consider references to the giving of such a test. Under the circumstances of the present case we conclude no prejudicial error occurred.

One other matter deserves comment before we conclude our discussion of this appeal. On July 1, 1970, this court adopted the same rules for criminal appellate practice as had previously governed civil appellate practice. (See Rules of the Supreme Court, Rule No. 1 (*d*), 205 Kan. xxvii.) The record on appeal should now be made up in accordance with the requirements of Rule No. 6. The appellant and the appellee should prepare and file their designation and counter designation of the contents of the record. The record can then be prepared in one volume without the confusion and overlapping which appears in the abstract and counter abstract filed in the present case. To supply the omissions in the abstract in the present case it was necessary for this court to compare the material in the counter abstract and insert such material in the abstract in order to determine what transpired in the court below. This is an unwelcome burden which we do not choose to assume in the future. Two years should be sufficient time to become familiar with the present rules.

The judgment is affirmed.