No. 70,195

STATE OF KANSAS, *Appellee*, v. MICHAEL B. LEWIS, *Appellant*.
(899 P.2d 1027)

Opinion filed July 14, 1995.

*Stephen C. Moss*, assistant appellate defender, argued the cause, and *Jessica R. Kunen*, chief appellate defender, was with him on the briefs for appellant.

*E. Bernard Hurd*, assistant district attorney, argued the cause, and *Michelle V. Hostetler*, assistant district attorney, *Joan M. Hamilton*, district attorney, and *Robert T. Stephan*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: Defendant was convicted of second-degree murder. Defendant contends the trial court erred in admitting into evidence his videotaped confession. This case is on a petition for review of the Court of Appeals' unpublished decision affirming the district court's admission of the confession. This court has jurisdiction pursuant to K.S.A. 60-2101(b) and K.S.A. 20-3018(b).

After a physical confrontation in the early morning hours of October 25, 1992, Michael Lewis fatally shot Leroy McFarland. Police apprehended Lewis shortly after 2:00 a.m. near the scene of the shooting in a taxicab. Lewis was shirtless and wearing pants stained with blood when arrested.

At approximately 5:00 a.m., detectives Wywadis and Broxterman interviewed Lewis at police headquarters. The interview was videotaped. Wywadis and Broxterman initiated a relatively polite inquiry, asking Lewis his name and address. In graphic and obscene language, Lewis refused to provide any information. After approximately five minutes, the detectives left the interview room briefly.

Upon the detectives' return, a heated exchange developed between Wywadis and Lewis. After Lewis used a derogatory term in reference to police officers, Wywadis slammed his fist against the table, rose to his feet and stood over the seated Lewis. Lewis, in graphic and obscene language, repeatedly refused to talk with the

detectives. Despite these refusals, the detectives persisted in prodding Lewis to respond to their questions. Lewis indicated he was not intimidated by Wywadis and stated he would not provide any information to the detectives. Wywadis shouted that he knew who Lewis was, what he had done, and that Lewis was going to the county jail for "murder one." Wywadis then recited the facts implicating Lewis in the shooting and the numerous eyewitnesses to the shooting. At one point, Wywadis made reference to Lewis having anal sex if he was incarcerated in the county jail. The heated exchange lasted approximately four to five minutes. After approximately 15 minutes, the interview concluded when Wywadis told Lewis to "[e]xercise your right; zip it, clip it," *i.e.*, to remain silent.

Lewis was never given his *Miranda* rights before or during the interview, nor did he make an incriminating statement. The district court's memorandum order noted that Wywadis used highly inappropriate epithets and terminology which could only be characterized as obscene and indecent.

Detective Mills had monitored the interview from another room. Immediately after the interview Mills talked with Lewis while Lewis was being booked into jail. Mills informed Lewis that the police were continuing to investigate and if Lewis wanted to give the police his side of the story, he should do so before getting an attorney "in the next day or so." Lewis responded by telling Mills that he was tired and hungry. Mills suggested that Lewis get some rest and food at the jail, and then they would talk. Lewis was transported to the jail, allowed to sleep and eat, and was eventually returned to police headquarters for an interview with Mills.

Mills commenced the second videotaped interview at approximately 12:20 p.m. Lewis had been arrested and in police custody for approximately 10 hours. Mills opened the recorded portion of the interview by stating that Lewis voluntarily agreed to speak with him after getting rest and food. Lewis did not respond to Mills' statement. Mills encouraged Lewis to relate his side of the story. Lewis responded that he was drunk and related his account of the fight with McFarland. When Lewis would cease making statements, Mills directed the conversation and encouraged him to continue. Lewis ended the story by stating: "I got my strap . . . I

smoked him." When Mills asked Lewis for clarification, Lewis responded that he got his pistol and started shooting.

After Lewis made the initial incriminating statement to Mills, Mills stated he needed a more specific statement from Lewis of what occurred and who was involved. Lewis, for the first time since his arrest, was informed of his *Miranda* rights at approximately 12:30 p.m. Lewis responded that he had on prior occasions heard the *Miranda* warnings, that he understood them, and that he would waive his rights. Mills then led Lewis through a reiteration of his story. Lewis embellished his account of the altercation with McFarland and the shooting. Lewis further admitted he had kicked McFarland after shooting him and asserted that McFarland deserved to be shot. The second interview lasted 1 hour and 50 minutes. Lewis was charged with first-degree murder.

Prior to trial, Lewis filed a motion to suppress his two videotaped statements. Lewis claimed his confessions were not voluntary and that he had not been informed of his *Miranda* rights after being arrested prior to making any incriminating statements. After hearing evidence, the district court observed that the conduct of Wywadis was "reprehensible" during the initial interview. The videotape of the first interview was not admitted into evidence.

The district court found that Lewis had agreed to Mills' request for a second interview. The court noted that Mills had informed Lewis of his *Miranda* rights within minutes after starting the second interview. The court found that Lewis, after being informed of his rights, knowingly waived those rights before providing a detailed statement about the shooting. The court refused to suppress Lewis' incriminating statements to Mills, citing *Michigan v. Mosley*, 423 U.S. 96, 46 L. Ed. 2d 313, 96 S. Ct. 321 (1975), as authority. At trial, the jury viewed the videotape of the entire second interview.

Lewis testified at trial and admitted that he had shot McFarland, emphasizing the fact that he had been drinking heavily prior to the shooting. The district court instructed the jury on first-degree murder, second-degree murder, voluntary manslaughter, involuntary manslaughter, self-defense, and the defense of voluntary intoxication. The jury found Lewis guilty of second-degree murder. The

district court sentenced Lewis to a term of 10-20 years. Lewis appealed, claiming the district judge erred by (1) failing to suppress the videotaped confession and (2) finding that his confession was voluntary.

In an unpublished opinion, a divided panel of the Court of Appeals affirmed Lewis' conviction. Relying upon *Oregon v. Elstad*, 470 U.S. 298, 84 L. Ed. 2d 222, 105 S. Ct. 1285 (1985), and *Michigan v. Mosley*, 423 U.S. 96, the majority held that the trial court committed harmless error by allowing the jury to view the pre-*Miranda* segment of the second interview which contained Lewis' initial incriminating statement to Mills. The majority observed that the defendant's post-*Miranda* statement detailed the same facts and sentiments expressed in defendant's pre-*Miranda* statements and that Lewis had admitted to shooting the victim when testifying at trial. Based on these findings, the majority concluded that the admission of the post-*Miranda* statement was proper and found beyond a reasonable doubt that the admission of defendant's pre-*Miranda* statements was harmless error that did not change the result of the trial.

In a dissenting opinion, Judge Becker stated that the conduct of the investigating officers in this case could be distinguished from the police conduct in *Mosley* and *Elstad*.

The dissent noted that in *Mosley*, although the defendant was interviewed twice, each interview was about a separate crime and the defendant was advised of his *Miranda* rights before each interview. The dissent observed that in *Elstad*, the defendant's pre-*Miranda* incriminating statement resulted from a single general inquiry of the officer while the defendant was in his residence. The officer was at the defendant's residence with a warrant for his arrest for a burglary. The officer stated to the defendant his belief that the defendant was involved in a burglary. The defendant responded, "Yes, I was there." Neither the environment nor the officer's conduct was coercive. There was no persistent, prolonged interrogation. The defendant was then transported to the sheriff's headquarters and advised of his *Miranda* rights. After waiving his rights, the defendant gave a full statement. The United States Supreme Court found the post-*Miranda* statement admissible.

The dissent concluded that the circumstances confronting Lewis were considerably different than the circumstances in *Elstad*. Lewis was taken into custody at 2:00 a.m. Three hours later, while in custody, he was interrogated by Wywadis in a manner that both the trial court and the majority of the Court of Appeals found to be "reprehensible." Later Mills encouraged Lewis to talk and implied that a request for an attorney would not be in Lewis' best interest.

The dissent pointed out that after Lewis was in custody 10 hours, the second interview began with Mills soliciting unwarned and inadmissible statements from Lewis. Mills stated at the onset of the interview that Lewis was participating voluntarily. Lewis did not acknowledge that he had voluntarily consented to the interview. After 40 minutes of continued custodial interrogation, Lewis made an incriminating statement. Mills then informed Lewis of his *Miranda* rights and asked Lewis to clarify his statement.

The dissent noted that in *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966), defendant Westover's confession was barred because a prolonged, un-*Mirandized*, custodial interrogation preceded a *Mirandized* interrogation that produced a confession. The Court found that the eventual reading of the *Miranda* warnings to an accused in custody did not erase the pressure from the first unlawful interrogation. 384 U.S. at 496-97.

The dissent observed that admission of the post-*Miranda* statements would condone the conduct of the officers. It stated that law enforcement would be without interrogation restraints as long as a *Miranda* warning was given after an inadmissible confession was obtained by the police. It noted that an arrestee's rights guaranteed by the Fifth Amendment and *Miranda* are not born upon being advised of the rights, but exist upon arrest. In applying the factors set forth in *State v. Graham*, 247 Kan. 388, 395, 799 P.2d 1003 (1990), the dissent concluded that the post-*Miranda* statements by Lewis were tainted by the inadmissible pre-*Miranda* statements and concluded those rights had been violated as to Lewis. See *State v. Gress*, 210 Kan. 850, 504 P.2d 256 (1972).

The dissent was unable to find beyond a reasonable doubt that the admission of the second videotaped interview into evidence

was harmless error. It pointed out that had the confession been suppressed, Lewis could have re-evaluated his decision to testify. When confronted with his confession, he had little choice but to try to counter it with his own testimony. The dissent noted that facts existed to attempt to impeach the testimony of the eyewitnesses. The dissent concluded Lewis' constitutional rights were violated because his conviction was based in whole or in part on an involuntary confession, even where there was ample evidence aside from the confession to support the conviction, and supported reversal of the trial court.

This court accepted Lewis' petition for review.

### Failure to Suppress Incriminating Statements

Lewis claims: (1) his incriminating statements were taken in violation of *Miranda* and (2) were involuntary. Lewis asserts the police violated his rights under the Fifth Amendment and coerced his confession by failing to inform him of his right to remain silent, using unconstitutional interrogation techniques, and failing to give the *Miranda* warnings until after eliciting his confession. Lewis uses the same reasoning to support each claim. Lewis argues the Court of Appeals erred in finding that the district court's admission of the pre-*Miranda* portion of his second interview was harmless error.

The State argues that the district court properly admitted Lewis' confession because Lewis (1) was properly informed of his right to remain silent; (2) failed to unambiguously state his desire to remain silent; and (3) voluntarily waived his Fifth Amendment right to silence subsequent to his incriminating statement. The State concludes that under the totality of the circumstances, Lewis' confession was voluntary.

### The Fifth Amendment & Miranda

The Fifth Amendment to the United States Constitution states that "[n]o person shall be . . . compelled in any Criminal Case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law." In *Miranda v. Arizona*, 384 U.S. 436, the United States Supreme Court dealt with the admis-

sibility of statements obtained from an individual who is subjected to custodial police interrogation and the necessity for procedures to assure that the individual is aware of the privilege against self-incrimination.

The Court noted in *Miranda* that if a person in custody is to be subjected to interrogation, the person must first be informed in clear and unequivocal terms that he or she has the right to remain silent. The Court held that when an individual is taken into custody or otherwise deprived of his or her freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized. The Court stated that procedural safeguards must be employed to protect the privilege and unless other fully effective means are adopted to notify the person of his right of silence and to assure that the exercise of the right will be scrupulously honored, the following measures are required.

The Supreme Court set out a procedure for warning individuals in police custody prior to questioning. The Court stated that the individual taken into custody must be warned prior to any questioning that he or she has the right to remain silent, that anything he or she says can be used against him or her in a court of law, that he or she has the right to the presence of an attorney, and that if he or she cannot afford an attorney one will be appointed for him or her prior to any questioning if he or she so desires. The *Miranda* Court determined that the opportunity to exercise these rights must be afforded to each individual throughout the interrogation. After such warnings have been given, and such opportunity afforded him or her, the individual may knowingly and intelligently waive these rights and agree to answer questions or make a statement. The Court found that unless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against the individual. See generally *State v. Fritschen*, 247 Kan. 592, 607-08, 802 P.2d 558 (1990); *State v. Taylor*, 231 Kan. 171, Syl. ¶ 1, 642 P.2d 989 (1982).

The United States Supreme Court reiterated the rule established in *Miranda* in *Oregon v. Elstad*, 470 U.S. 298. The Court stated that "unwarned statements that are otherwise voluntary

within the meaning of the Fifth Amendment *must nevertheless be excluded from evidence* under *Miranda*." (Emphasis added.) 470 U.S. at 307. See *Michigan v. Mosley*, 423 U.S. at 100.

In *Miranda*, the United States Supreme Court set a bright line rule that a suspect who has responded to uncoercive questioning by a police officer while in custody and without being given *Miranda* warnings is not incapable of waiving his rights and later confessing. In *Westover v. United States* (one of the cases consolidated into the *Miranda* decision, see 384 U.S. 436), a case similar to this case, a confession was suppressed because a prolonged, un-*Mirandized*, custodial interrogation preceded a *Mirandized* interrogation that produced a confession; the Court found the eventual reading of the *Miranda* warnings did not ease the pressure from the first unlawful interrogation. 384 U.S. at 496-97.

In *Mosley*, the Supreme Court found that the admissibility of an incriminating statement obtained after a person in custody had initially decided to remain silent and later gave an incriminating statement depended upon whether the person's right to cut off questioning was scrupulously honored by the police. Mosley was questioned about a robbery; he exercised his right to silence after being advised of his *Miranda* rights. The police ceased interrogation. Hours later, a different police officer interviewed the defendant about a homicide. The officer re-*Mirandized* the defendant and the defendant made an admission. 423 U.S. at 97-98. The *Mosley* court addressed whether the second interview violated the defendant's prior exercise of the right to remain silent. The court focused on this language in *Miranda*:

" 'Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point, he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise.' " 423 U.S. at 100 (quoting *Miranda*, 384 U.S. at 473-74).

The *Mosley* court found that the statement of an accused made during custodial interrogation after invoking the right to remain silent will only be admissible when the suspect's right to terminate

questioning has been "scrupulously honored." 423 U.S. at 104. The Court used these circumstances to analyze whether Mosley's right to remain silent had been honored: Police told Mosley prior to the first interview he was under no obligation to answer questions and could remain silent; Mosley stated he understood his *Miranda* rights and signed a *Miranda* form; the initial interview ceased upon Mosley stating he did not want to talk; two hours elapsed between the interviews, and *Miranda* warnings were again read to Mosley prior to the second interview; the second interview focused solely on a different crime than that discussed in the first interview. 423 U.S. at 104-06.

The Court's analysis placed great emphasis upon the fact Mosley had received *Miranda* warnings prior to each interview. See 423 U.S. at 106-07. Justice Stewart wrote: "The cardinal fact of *Westover—the failure of the police officers to give any warnings whatever to the person in their custody before embarking on an intense and prolonged interrogation of him*—was simply not present in this case." (Emphasis added.) 423 U.S. at 107. The Court found that under the circumstances, Mosley's constitutional rights had been honored and his statements were admissible. 423 U.S. at 107.

In *Oregon v. Elstad*, 470 U.S. 298, the bright line rule announced in *Miranda* was later modified in that a subsequent administration of the *Miranda* warnings to a suspect who had given a voluntary but unwarned statement renders the statement admissible if the suspect makes a rational and intelligent choice to waive his or her right to remain silent. Prior to *Elstad*, this court had held that a confession obtained after a *Miranda* warning may be inadmissible into evidence as "fruit of the poisonous tree" if the earlier statements were obtained by interrogation without the necessary advice of constitutional rights. *State v. Gress*, 210 Kan. 850, Syl. ¶ 1, 504 P.2d 256 (1972); *State v. Lekas*, 201 Kan. 579, 587, 442 P.2d 11 (1968).

In *Elstad*, the defendant was arrested for burglary of a neighbor's home. A detective asked Elstad if he knew why the officers were there. Elstad answered, "No." The detective stated they believed that Elstad was involved in the burglary. Elstad then responded, "Yes, I was there." Elstad had incriminated himself prior to being

*Mirandized.* After being taken to the police station and read his *Miranda* rights, he signed a written confession. Elstad conceded the officers made no threats or promises prior to his confession. 470 U.S. at 301-02.

The Oregon court suppressed Elstad's confession, following the rationale which had been applied in Kansas. The United States Supreme Court disagreed. The Supreme Court stated the immunity provided an individual whose pre-*Miranda* admissions tainted his post-*Miranda* confession came at "a high cost to legitimate law enforcement activity" while providing little protection to a defendant's interest in not testifying against himself. 470 U.S. at 312.

The Supreme Court stated that a remark made by an individual suspected of committing a crime prior to administration of *Miranda* warnings does not prevent the admission of post-*Miranda* incriminating statements given without coercion or in an attempt to undermine a suspect's ability to exercise free will. Justice O'Connor wrote: "When neither the initial nor the subsequent admission is coerced, little justification exists for permitting the highly probative evidence of a voluntary confession to be irretrievably lost to the factfinder." 470 U.S. at 312. Justice O'Connor further noted the difficulty in knowing what causes a person to speak, stating confessions can be linked to such events as discussions with a minister or a parent. 470 U.S. at 314. The primary consideration to be given both the pre-*Miranda* admissions and post-*Miranda* admissions is the voluntariness of the statements. 470 U.S. at 318. The parties conceded that the defendant's initial statement, despite being voluntary, was not admissible because it preceded advisement of the *Miranda* rights. 470 U.S. at 302.

The first question in an analysis of the right to remain silent is whether an individual was undergoing "custodial interrogation." See *State v. Fritschen*, 247 Kan. 592, Syl. ¶ 1. The State concedes that Lewis was arrested and undergoing custodial interrogation. The State argues Lewis was made aware of his *Miranda* rights during the initial interrogation. It claims that Detective Wywadis indicated to the defendant that he could remain silent when Wywadis told Lewis near the end of the first interview "to exercise his right; zip it" or answer the questions. The State claims the second

warning of the right to remain silent occurred when Lewis was being booked as a prisoner and Detective Mills informed Lewis that he (Lewis) would be getting an attorney in the next day or two.

The district court's findings do not support the State's claim that Lewis was warned of his rights prior to the second interview. It found that the first time Lewis had been informed of his *Miranda* rights was after he made the incriminating statement to Mills during the second interview. Even if we accept the State's claim that Lewis was made aware of his right to remain silent, it is important to note that neither Wywadis, Broxterman, nor Mills informed Lewis, as required by *Miranda*, that a request for an attorney would be honored and questioning would cease until an attorney was present until the police had elicited the incriminating statement.

The State argues Lewis' conversation with Mills was voluntary and constituted a waiver of his *Miranda* rights. The State fails to acknowledge that Lewis had not been apprised of his *Miranda* rights when he acceded to Mills' request for a second interview and confessed to shooting McFarland. It was during the second interview, after Lewis stated he "smoked" the victim, that Mills stated to Lewis that he needed to inform Lewis of his rights because he (Mills) needed to ask Lewis further questions and obtain more information about the shooting.

The admissibility of statements made by a defendant before *Miranda* warnings are given depends on whether the statements are the result of a custodial interrogation or an investigatory interrogation. Custodial interrogation under *Miranda* refers not only to express questioning but also to any words or actions on the part of the police that the police should know are reasonably likely to elicit an incriminatory response from the suspect. See *State v. Taylor*, 231 Kan. 171, Syl. ¶¶ 1, 2.

The State asserts that the statement was admissible under the rationale of *Elstad*. We disagree. The *Elstad* Court decided a confession made prior to administration of the *Miranda* warnings does not prevent the admission of statements following reading and waiver of the *Miranda* rights when there is *no coercion or an attempt to undermine a suspect's ability to exercise free will*. 470 U.S.

at 312. Four factors indicate the voluntariness of a confession: (1) the manner and duration of questioning; (2) the suspect's ability to communicate with others if requested; (3) the suspect's intellect, age, and background; and (4) the fairness of the interrogating officers. *State v. Graham*, 247 Kan. at 395.

The Supreme Court has not overruled the general rule that any statement made by a person during custodial police interrogation cannot, over the person's objection, be admitted in evidence against the person at trial, even though the statement may in fact be wholly voluntary, unless the police, before interrogation, informed the person that he or she has a right to remain silent, that any statement the person makes may be used as evidence against that person, and that the person has a right to the presence of an attorney, either retained or appointed.

An exception to the general rule is that

"absent deliberately coercive or improper tactics [by police] in obtaining an initial statement, the mere fact that a suspect has made an unwarned admission does not warrant a presumption of compulsion. A subsequent administration of *Miranda* warnings to a suspect who has given a voluntary but unwarned statement while in custody may remove the conditions that precluded admission of the earlier statement. In such circumstances, the finder of fact may reasonably conclude that the suspect made a rational and intelligent choice whether to waive or invoke his or her rights." *Oregon v. Elstad*, 470 U.S. 298, 314, 84 L. Ed. 2d 222, 105 S. Ct. 1285 (1985). See *Michigan v. Mosley*, 423 U.S. 96, 46 L. Ed. 2d 313, 96 S. Ct. 321 (1975).

In determining whether a confession is voluntary, a court is to look at the totality of the circumstances. The burden of proving that a confession or admission is admissible shall be on the prosecution, and the required proof is by a preponderance of the evidence. When a trial court conducts a full pretrial hearing on the admissibility of an extrajudicial statement by an accused, determines the statement was freely and voluntarily given, and admits the statement into evidence at the trial, this court accepts that determination if it is supported by substantial competent evidence.

Lewis did not want or request to speak with the officers. Lewis was 19 years old when questioned, and he demonstrated low to average intellect. He had a juvenile burglary conviction and two

misdemeanor convictions. The Court of Appeals found that the manner of questioning during the first interview and part of the second interview was deliberately coercive and that improper tactics had been used by the police.

The trial court and the Court of Appeals correctly held that the first videotaped interview was not admissible. On appeal the first interview is relevant, however, to show the police efforts to obtain an incriminating statement during the first interview even after Lewis told the police he had nothing to say. In response, the police used deliberate coercive tactics in an attempt to obtain a statement from Lewis. Wywadis yelled at Lewis, made references to anal sex, and pressured Lewis to talk. At the conclusion of the first interview, Mills, who was aware that Lewis had refused to talk with the other officers, contacted Lewis and encouraged him to agree to a second interview. At the second interview, Mills continued the use of improper tactics to overcome Lewis' resistance to talk and obtain an incriminating statement from Lewis. Mills deliberately failed to warn Lewis of his *Miranda* rights until Mills had obtained the incriminating statement from Lewis.

The failure of the officers to administer the *Miranda* warnings to Lewis created the presumption of compulsion. Not only has the State failed to overcome the presumption of compulsion, the Court of Appeals found that the police used deliberately coercive and improper tactics in violation of the Fifth Amendment to obtain Lewis' initial incriminating statement.

The procedural safeguards of *Miranda* are to be timely applied. See, *e.g.*, *State v. Goering*, 8 Kan. App. 2d 338, 656 P.2d 790, *rev. denied* 233 Kan. 1093 (1983); *State v. Holt*, 2 Kan. App. 2d 1, 5, 573 P.2d 1117 (1978). When the police fail to warn a person in custody of the right to remain silent and use deliberately coercive and/or improper tactics in obtaining an incriminating statement, the privilege against self-incrimination is violated and the statement cannot be used as evidence against the individual.

Lewis, who had been arrested and in custody for approximately 10 hours, was by design not warned of his rights as required under *Miranda* until after he incriminated himself during the second interview with the police. The police failed to "scrupulously honor"

Lewis' desire not to talk and failed to inform Lewis of his *Miranda* rights until he had made the incriminating statement. Under the circumstances, the police used deliberately coercive and improper tactics to obtain the statement. Applying the rationale of *Mosley* and *Elstad* to the facts of this case does not support the decisions of the trial court or the Court of Appeals in admitting the video-taped confession.

Reversed and remanded for a new trial.