Wachtler, J. (concurring).
I agree with the result and most of the reasoning adopted by the majority; however, there are two parts of the decision which trouble me.
Initially I do not feel it would be wise for this court to adopt the “inevitable discovery” doctrine. I can accept, with some reluctance, a policy of allowing evidence to be obtained without a warrant where the operation of law would have made its future discovery inevitable. Both Wayne v. United States (318 F. 2d 205, cert. den. 375 U. S. 860) and People v. Soto (55 Misc 2d 219), cited in the decision, can be rationalized on that ground. However, allowing “ poisoned ” evidence in on the ground that some hypothetical police search would have uncovered the evidence anyway results in a speculative theory with no discernable limits. Here there was no “ independent source ” for the police search. (See Silverthorne Lbr. Co. v. United States, 251 U. S. 385, 392.) It is not “inconceivable” that the police would not have searched the closet. In point of fact, they did not search the closet until told by defendant that the gun was there. It is not at all obvious that the gun would be found near where defendant was hiding. Defendant had left the scene of the crime several hours prior to his apprehension. Most defendants hide, destroy, or dump the ihcriminating weapon as soon after the crime as possible. In fact, few defendants are arrested in pos *514 session of the murder weapon several hours after the commas'sion of the crime. The ‘£ inevitable discovery ’ ’ doctrine is speculative at best, and there is absolutely nothing to prevent the expansion of the doctrine far beyond ££ the closet ”.
The decision states that the scope of the doctrine is coextensive with what “the normal course of police investigation ” would have inevitably turned up. “ The normal course of police investigation ’ ’ differs greatly from one police department to another and even within departments, so theoretically at least the constitutional standard would differ from locale to locale.
In addition, defining what “ the normal course of police investigation ” would inevitably have turned up could prove most difficult. In this case, the decision states that unless the gun was thrown away ‘ ‘ Once it was not found upon him, the next most reasonable place to look for it was where he had been just before he was seized Does that mean this doctrine is limited to “ the next most reasonable place ” and excludes the second next most reasonable place? And who can produce a priority list of “ reasonable ” places to use as a standard in these types of cases % And what does “ where he has been seized ” mean? Is it limited to the closet or does it include the house? And if the defendant is apprehended outside the house, how will it be possible to give any consistent definition to the term “ where he has been seized ”? I am afraid these are not questions that can ever be worked out with any consistency on a case by case basis.
Even if we could be fairly certain that a subsequent police search would turn up the evidence, we could not be certain that the search would have been conducted in a constitutional manner. In the ease at bar, it was at least arguable that the warrantless search of the house was unconstitutional. The question arises if the £ £ inevitable discovery ’ ’ doctrine would expunge the taint from an unconstitutional and warrantless search if the People could convince a Judge that regular police procedure would have produced a warrant independent of the illegal search.
As I stated' in my dissent in People v. Brosman, 32 N Y 2d 254, I think that the application of standards is so inherently difficult in search and seizure cases (really in the entire criminal area) that we must be certain that the standard at least is clear *515 and unambiguous. I think both for the sake of certainty and the integrity of our State and Federal Constitutions we should follow an objective test in situations such as these. If the police did in fact discover the evidence as the result of an unconstitutional action, the evidence should be suppressed. The “ inevitable discovery ” doctrine is so ambiguous and so subject to abuse that I think it is unwise to adopt it.
Equally bothersome to me is the majority’s interpretation of Chimel v. California (395 U. S. 752). Their decision implicitly adopts the caveat in People v. Floyd (26 N Y 2d 558, 563) that “it is not at all clear that the ‘ grabbing distance ’ authorized in the Chimel case is conditioned upon the arrested person’s continued capacity ‘ to grab ’ ”. I do not believe that the Chimel rationale would uphold a search of a “ grabbing area ” after the defendant can no longer grab. Contrary to the assertion in the decision, the Chimel court never approved a search of the area where the “arrest occurs”. The Supreme Court only approved a search where there is a danger to the officer or there is a possibility the evidence will be concealed or destroyed. (395 U. S. 752, 763, supra.) Later the court emphasized that the police may search the area “ from which the person arrested might obtain weapons or evidentiary items ”. (Id., at p. 766; emphasis added.) The court did not say and clearly did not mean the police could search where an arrested man might have obtained weapons or evidentiary items. The court specifically held that a search of constitutionally protected areas could not even be conducted in the room where the “ arrest occurs ” if those areas are not within reach of the arrested man. (Id., at p. 763.)
The grabbing area delineation only makes sense if it is supported by a rationale resting on danger to the police or evidence destruction. If a search could be conducted after the apprehended person can no longer reach any evidence or weapon, the definition of the allowable search area as, in effect, the “ grabbing area ’’becomes completely arbitrary and without any underlying justification. If the Chimel case is to be overruled or limited, it is the place of the Supreme Court and not. our court to do so.
I agree that there were exigent circumstances which justified the police entering the house without a warrant. Had the gun *516 been in open sight, it could have been seized because once the defendant gave the police a justification for entering the house he no longer had a legitimate expectation of privacy and thus no constitutional protection from apparent evidence in the area the police had legitimately entered. However, in the case at bar, the gun was in a bag hidden from open view. The decision notes there was no [1] ‘ rummaging at will ’ ’ but that was only because the unconstitutionally obtained confession allowed the police to know exactly where the gun was hidden. The hypothetical police search envisioned by the report under the ‘ ‘ inevitable discovery” doctrine would have “ inevitably ” led to a great deal of “ rummaging around ”.
I might add that I am not at all certain that the majority had to reach the search and seizure question in its decision after having adopted the “ inevitable discovery ” doctrine. If “ the normal course of police investigation ” would have turned up the gun, why not also assume that the hypothetical search was conducted pursuant to a hypothetical search warrant? It is certainly ‘ ‘ the normal course of police investigation ’ ’ to obtain a warrant where one is required. Of course, we are well aware that police, in completely good faith, often fail to obtain warrants even in situations obviously calling for warrants just as they often fail to search areas which, with the aid of hindsight,* seem to have been obvious places to search.
In conclusion then, although I believe that the receipt of the gun in evidence constituted error, it should be considered harmless in light of the overwhelming proof establishing the defendant’s guilt of the homicides. Accordingly, I concur in the court’s decision that the judgment of conviction be modified and the case remanded to the trial court for resentencing.
Judges Burke, Breitel, Jasen and Gabrielli concur with Chief Judge Fuld; Judge Wachtler concurs in a separate opinion in which Judge Jones concurs.
Judgment modified and case remitted to Oneida County Court for further proceedings in accordance with the opinion herein and, as so modified, affirmed.

 I am also afraid that the “ inevitable discovery ” doctrine cannot help but become sub silentio a result-oriented theory.