Samuel **CUNNINGHAM**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 45641.

Court of Criminal Appeals of Texas.

Sept. 25, 1972.

Abraham D. Ribak, San Antonio, for appellant.

Ted Butler, Dist. Atty., Gordon V. Armstrong, Bill Harris and Antonio G. Cantu, Asst. Dist. Attys., San Antonio, Jim D. Vollers, State's Atty., and Robert A. Huttash, Asst. State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

This is an appeal from an order revoking probation.

This appeal presents questions of the admissibility of statements made by a probationer to his probation officer in absence of warnings required by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); whether communications between probationers and probation officers are privileged, and whether the evidence was sufficient to sustain the order of revocation.

On March 15, 1971, the appellant entered a plea of guilty to the offense of robbery by assault, after waiving trial by jury. His punishment was assessed at 10 years, but the imposition of the sentence was suspended and he was placed on probation. Among the conditions of probation were the requirements that the appellant

"1. Neither commit nor be convicted of any offense against the Laws of the State of Texas, any other State or of the United States of America;

"2. Avoid injurious or vicious habits and abstain from the use of narcotic drugs in any form; not use alcoholic beverages;

".   .   .   .

"5. Report, in person, to the Adult Probation Officer of Bexar County,

Texas, on the 2nd day of each month, and when said day of the month falls on a Saturday, Sunday or a legal holiday, then you will report on the next working day;

".   .   ."

On July 16, 1971, the State filed a motion to revoke probation alleging that the appellant had violated probationary condition No. 2 in that he "admitted to Adult Probation Officer H. H. Whitehill that he was using heroin. Defendant admitted to using one and one-half capsules of heroin on July 6, 1971." The motion also alleged that the appellant had failed to report to his probation officer "for the month of June 1971," and, further, alleged failure to keep steady employment; pay court costs and restitution, all in violation of other probationary conditions.

On August 18, 1971, the State filed a First Amended Motion to Revoke Probation alleging a violation of condition No. 1 in that he had on July 18, 1971 committed an aggravated assault upon a female. The earlier alleged violations were also included in this motion.

On August 19, 1971, the court conducted a revocation hearing. Near the conclusion of such hearing, the court announced sua sponte it would not consider the First Amended Motion to Revoke Probation stating ".   .   . [l]ocal court rules provide that at the time of the setting of any case any amendments to the pleadings on any case have to be filed at least seven days before the case, to be considered."

At the conclusion of the hearing, the court apparently held that evidence was insufficient to show that appellant did not maintain steady employment, failed to pay court costs, etc., or failed to report,[1] but

---

1. The court apparently based its finding upon the probation officer's testimony that appellant had reported on April 30, 1971, and had been told that he need not report during the month of May. The court apparently declined to revoke for failing to report during June on the ground that the appellant may have misunderstood the probation officer's instructions which varied the court's conditions of probation without authority.

concluded that it did show he admitted to using narcotics in violation of probationary condition No. 2.

At the hearing, Probation Officer White-hill testified that the appellant, who had not reported during the month of June, had been sent a delinquent notice, and that he appeared in the probation office on July 7th, that during the interview and using "a set format" for monthly reports, he inquired of the appellant if he had used narcotics "in the past month." Over objection, that such was a privileged communication, Whitehill was permitted to testify that appellant answered in the affirmative and stated he "was using about a gram and a half three or four times a week. A cap and a half each day, three or four times a week."

After the State rested its case, the appellant's counsel moved to continue him on probation contending the State had failed to prove its allegations. During the colloquy, the court stated that the way it "understood his testimony was that the man admitted that he was shooting a cap and a half of heroin about one or two days a week." Appellant's counsel then stated "the Defendant admitted to using one and a half caps on July 6th."

The question of the applicability of *Miranda* to an interview between a probationer and his probation officer was raised in Campbell v. State, 456 S.W.2d 918 (Tex. Cr.App.1970), but not answered there for the reasons stated. See Comment, 23 Baylor L.Rev. 431 (1971).

In the instant case, the appellant, on July 7, 1971, reported to the office of his probation officer. Whether he was making his monthly report or responding to a delinquent notice mailed him by the probation officer is not absolutely clear from the record. During the interview, the probation officer asked certain routine questions designed for such monthly reports. In response to the use of narcotics question, the appellant answered affirmatively as earlier described. At the conclusion of the interview, the appellant left the office. He was not placed under arrest.

The motion to revoke probation was filed on July 16, 1971, and a capias for appellant's arrest was issued the same date. On July 22, 1971, the appellant was arrested and taken into custody.

■ Here, the probation officer was taking a monthly report, not conducting an investigation into a suspected crime where the investigation had began to focus upon the probationer. The appellant was not in custody and, in fact, left following the interview.

In *Miranda*, the Court said:

". . . By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. . . ." 384 U.S. at 444, 86 S.Ct. at 1612.

The Court then added in a footnote:

"This is what we meant in Escobedo when we spoke of an investigation which had focused on an accused."

It is clear that the appellant-probationer was not under arrest, "in custody" or "otherwise deprived of his freedom of action in any significant way" at the time of the testimony complained of or otherwise subjected to custodial interrogation. See Brown v. State, 475 S.W.2d 938, 951 (Tex.Cr. App.1972); Jones v. State, 442 S.W.2d 698, 703 (Tex.Cr.App.1969).[2]

As pointed out in People v. W., 24 N.Y. 2d 732, 302 N.Y.S.2d 260, 249 N.E.2d 882 (1969), which involved an almost identical question,

". . . [t]he questioning of the appellant was hardly the sort of incommunicado, police-dominated atmosphere of

---

2. As to what constitutes custodial interrogation, see 31 A.L.R.3d 565, 696.

**120**

custodial interrogation and overbearing of the subject's will at which the *Miranda* rule was aimed. . . .

". . . He was questioned not by policemen charged with the duty of apprehending and convicting criminals, but rather by probation officers whose aim is to help probationers rehabilitate themselves."

The purpose of probation would be materially affected and the relationship between the probation officer and his probationer would be a strained one if upon every contact, monthly report, or visit, the officer was required to give the *Miranda* warnings and obtain an affirmative waiver of the probationer's rights. People v. W., supra; Nettles v. State, 248 So.2d 259 (Dist.Ct. of Fla.1971).

We cannot agree that the testimony relating to the interview in the probation office, under the circumstances described, was barred by *Miranda* as claimed by the appellant.[3] Most courts which have considered this or similar questions have also failed to find a *Miranda* violation. See, e. g., Clark v. State, 222 So.2d 766 (Dist.Ct. of App., Fla.1969); Nettles v. State, supra; People v. W., supra; Gilmore v. People, 171 Colo. 358, 467 P.2d 828 (1970); United States v. Johnson, 455 F.2d 932 (5th Cir. 1972).

Next, appellant contends that communications between a probationer and his probation officer are subject to a testimonial privilege that can be invoked by the probationer during a revocation hearing.

Appellant calls attention to the provisions of Article 781b § 29, Vernon's Ann. C.C.P.1925, enacted in 1947,[4] which he contends gave a privileged status to the communications in question. He readily acknowledges that the statute was amended in 1957. See Article 781d §§ 27–35, Vernon's Ann.C.C.P.1925. He contends, however, that the present statute, Article 42.12 § 27, Vernon's Ann.C.C.P.1965, is still applicable to parole officers and no distinction in this regard should be made between probation and parole officers. We do not agree.

We do not find that Sec. 29 of Article 781b, supra, was construed while it was in effect. Whatever construction might have been given the statute, it was repealed in 1957, and replaced by Sec. 27 of Article 781d, supra, which contained some material changes. The amendment was not applicable to probation officers and the phrase ". . . shall not be receivable as evidence in any court as to the guilt or innocence of a defendant . . . ." contained in the former statute was deleted. Said Sec. 27 provided that certain information concerning *parolees*, etc., was to be

3. It is not our intention to hold that *Miranda* can never be applicable to any contact, interview, interrogation, visit, etc., between a probationer and his probation officer regardless of the circumstances. In State v. Lekas, 201 Kan. 579, 442 P.2d 11 (1968), the accused, who was on parole (not probation), was taken into custody by his parole officer and a police officer. Incriminating statements then were elicited from the defendant by his parole officer concerning a new offense committed while he was on parole. No warnings were given. That confession used on the trial of the new offense was held to have been taken in violation of *Miranda*.

4. Article 781b § 29, Vernon's Ann.C.C.P. 1925, reads as follows:

"All information and data obtained in the discharge of official duty by any probation or parole officer or employee, or member of the Board shall be privileged information, shall not be receivable as evidence in any court as to the guilt or innocence of a defendant and shall not be disclosed directly or indirectly to anyone other than to the Judge or Board.

"Nothing in this Section shall be construed to prevent a probation and parole officer from cooperating with all law enforcement officers, social agencies, and welfare departments, in furnishing information or receiving information concerning a probationer or parolee."

This privileged information was noted in 1 McCormick & Ray 2nd Ed. Evidence § 504, pp. 428–29, n. 15, though the statute has now been repealed.

"privileged information" not subject to public inspection. Sec. 27 of 781d, supra, was brought forward unchanged as Sec. 27 of the present Article 42.12, supra. We do not construe such statute as providing a testimonial privilege of any kind.

"The mere fact that information was communicated in confidence or under pledge of secrecy does not raise a privilege. And in the absence of statute the courts have rarely extended to other relationships the protection which the common law afforded to communications between attorney and client and husband and wife. . . ." 1 McCormick & Ray 2nd Ed. Evidence § 502 pp. 424–25.

Further, the burden of proof to establish the existence of a privilege rests on the one asserting the same. McGrede v. Rembert Nat. Bank, 147 S.W.2d 580 (Tex.Civ.App.—Texarkana 1941).

In Clark v. State, supra, the Florida court said:

". . . We find nothing wrong in his (probation supervisor) asking Clark about an alleged violation of probation, and having been informed of it he is under a duty to advise the court, which he did. . . ." 222 So.2d at 767.

And, we add that we see nothing wrong in the probation officer so testifying as to the alleged violation of probation at the hearing on the motion to revoke.[5]

Appellant's contention is without merit.

Lastly, we shall consider appellant's claim that the evidence was insufficient "to support finding probationer had taken heroin in violation of state law and thus of condition of probation."

First, it should be observed that the revocation was based upon a violation of probationary condition No. 2 which required the abstinence ". . . from the use of narcotic drugs in any form . . . ." and not upon a violation of a penal law as set forth in probationary condition No. 1. A close reading of the record reveals that the State did not, in fact, prove that appellant admitted to using heroin as alleged in the motion to revoke, perhaps a case of "poor proving" as noted in Barnes v. State, 467 S.W.2d 437 (Tex.Cr.App.1971). However, Probation Officer Whitehill testified that appellant acknowledged using "narcotics" in the amounts earlier described. Appellant's appointed counsel testified that "after being advised by the probation officer about the allegations of the use of heroin" he discussed "this" with the appellant and, subsequently, spoke to "various parties with The Patrician Movement" and had them conduct interviews with the appellant and urged the court to place appellant under their program.[6]

While the State did not prove the allegation as to heroin, the revocation hearing was held within the probationary period and the evidence did reflect a violation of probationary condition No. 2. No attack is made upon the nature of the probationary

5. Appellant does not cite or urge that Article 38.101, Vernon's Ann.C.C.P., enacted in 1971 (Acts 1971, 62nd Leg.R.S., p. 2984, ch. 983), is here applicable and we do not deem it applicable.

Such statute provides: "A communication to any person involved in the treatment or examination of drug abusers by a person being treated voluntarily or being examined for admission to voluntary treatment for drug abuse is not admissible. However, information derived from the treatment or examination of drug abusers may be used for statistical and research purposes if the names

of the patients are not revealed." See also Article 38.10, Vernon's Ann.C.C.P., as amended in 1971.

The appellant was on probation for robbery and was not being treated by or examined for admission for treatment for drug abuse by the probation officer.

6. It should be here observed that while the attorney revealed the fact of a conversation with the appellant he did not disclose any communication made by the appellant, and the testimony offered was offered in behalf of the appellant.

condition and no claim is advanced that the use of narcotics was lawful.

We cannot say that the trial court abused its discretion in revoking probation.

The judgment is affirmed.