Richard Lynn CREEKS, Appellant,

v.

The STATE of Texas, Appellee.

No. 52056.

Court of Criminal Appeals of Texas.

June 23, 1976.

Opinion on State's Motion for Rehearing Nov. 3, 1976.

Tom S. McCorkle, Dallas, for appellant.

Henry Wade, Dist. Atty., Maridell Templeton and R. Gary Noble, Asst. Dist. Attys., Dallas, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

BROWN, Commissioner.

On November 30, 1973, appellant was convicted of the offense of felony theft upon his plea of guilty before the court. Punishment was assessed at five years probated. One of the conditions of probation was that during the term of probation appellant would commit no offense against the laws of this or any other state or the United States. On June 23, 1975, a motion to revoke probation was filed by appellant's probation officer alleging that appellant had committed the offense of theft on June 19, 1975. This appeal is from the order revoking probation.

At the hearing on the motion to revoke probation the prosecution called three witnesses. The first witness, H. E. Beavers, appellant's employer, testified that he was the supervisor of several service stations, one of which was operated by appellant. Beavers' testimony was, to say the least, most confusing. In fact, at one point the court broke into the testimony of Beavers and stated: "Just a minute, the Court is getting a little confused." At one point Beavers testified that there was a shortage of $600.00. At another time he testified

that the shortage was more than Sixty Dollars—it was over a Hundred Dollars. On cross-examination, Beavers testified as follows:

"Q. You knew there were shortages, didn't you?

"A. Yes, sir.

"Q. And you all had had conversations, you and Mr. Creeks had had conversations about the shortages?

"A. He took care of the shortages, yes, sir. He paid them. They came out of his check. That was the understanding when he came on and was hired, that if there were shortages, that he paid them.

"Q. In other words, by way of example, if I were working for you as one of your Managers and on, say, June 18th of this year, I was short a Hundred Dollars for one reason or another, I would have to pay the Company back that Hundred Bucks, right?

"A. Yes.

"Q. Right?

"A. Uh-huh.

"Q. And you're saying that he paid back his shortages?

"A. Yes, he had prior to that.

"Q. All right. Why is it on June the 19th—What's the difference between that shortage of Sixty Dollars and all the other shortages?

"A. Well, sir, personally, it's really not up to me. If there is a big shortage, I have got to call the man over me. I've got to tell him about it. This was what I would consider to be a big shortage, more than his check would be, so I called my boss and my boss talked to him on the phone, *and they made an agreement, Richard agreed with him, as far as I know, to work the shortage out.*" (Emphasis added.)

Beavers further testified that when he went to the station on June 19th appellant was not there. Appellant's brother was operating the station and advised Beavers that appellant was ill and unable to come to

work. Beavers had the brother call appellant at home and advise him to come to the station, which appellant did. Beavers had gone to the station on June 19th in response to a call from appellant's brother that he had just been a victim of a robbery at the station in which over a hundred dollars was reported to have been taken.

The next witness, R. D. Lewis, a Dallas police officer, testified that he was assigned as a polygraph examiner on June 21st when Investigator Crumm of the Dallas Police Department brought appellant to him for an examination to see if appellant had anything to do with a theft at a service station. He had appellant sign the polygraph consent form which stated that appellant knew he was not under arrest and voluntarily agreed to take a polygraph examination. Over appellant's objection, Lewis was then permitted to testify that prior to the examination appellant was questioned and verbally admitted the theft of Sixty Dollars from the service station on the 19th of June. Lewis admitted that he did not give appellant any warning of his rights as required by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, nor was appellant's statement reduced to writing. The only other witness for the prosecution was probation officer Reggie Storey, who testified that when he learned that appellant had been arrested and charged with theft and was subsequently released (apparently on bond) he filed a motion to revoke probation and caused a warrant to issue for appellant's arrest. When appellant came to the probation office on June 24th, the witness notified the police to come pick up appellant and while waiting for the police he and appellant had a conversation. Over appellant's objection, the witness was permitted to testify that appellant, who had not been warned of his rights, orally confessed that he had stolen the Sixty Dollars from the filling station.

V.A.C.C.P. Art. 38.22 provides that a confession by a defendant in custody must be in writing after he has been duly warned of his rights. Under said Article, an oral confession is admissible only when it (1) leads to the fruits of the crime, or (2) is res gestae of the offense, neither of which exception is here present.

■ The State relies upon the form signed by appellant in the polygraph office stating that he was not under arrest. The testimony, however, reflects that the investigation of the theft had focused upon the appellant at the time he was brought to the polygraph office by Officer Crumm and that he was taken in custody from the polygraph office to the jail, where he was booked for theft. One of the most significant factors to determine whether or not the accused was in custody was whether or not the focus of the investigation had centered upon the accused at the time he was interrogated. *U. S. v. Phelps*, 443 F.2d 246 (5th Cir. 1971). Under these circumstances, appellant's objection to the oral confession made in the polygraph office should have been sustained.

■ As regards the oral confession made to the probation officer, the State relies upon *Cunningham v. State*, Tex.Cr.App., 488 S.W.2d 117, wherein this Court held admissible a confession made to a probation officer so long as the probationer was not under arrest or in custody at the time that the confession was made. It is undisputed that when appellant reported to his probation officer such officer had already filed a motion to revoke probation, had caused a warrant to issue for the arrest of appellant, and had notified the police to come to the probation office to make the arrest of appellant. Under these circumstances, *Cunningham*, supra, was not applicable and appellant's objection to the oral confession given to his probation officer should have been sustained.

The judgment is reversed and the cause remanded.

Opinion approved by the Court.

OPINION ON STATE'S MOTION
FOR REHEARING

ONION, Presiding Judge.

The record before us was poorly developed at the revocation hearing as to the

exact circumstances under which the incriminating statement was made to the probation officer by the appellant.

It is clear, however, that Storey, the probation officer, testified that on June 23, 1975, he learned the appellant had been arrested for theft and the officer took steps to see that a warrant issued for appellant's arrest for probation violation on that basis. On the same date the appellant called and informed Storey of his arrest, a fact of which Storey was already aware. On June 24 the appellant "on his own" came to the probation office. While Storey testified he did not arrest the appellant and that his "chief" had said, "Do not stop anyone," the record reflects the following on voir dire examination of Storey by appellant's counsel:

"Q. You indicated for him to go with you into your office?

"A. Yes, sir. We knew Officers were coming.

"Q. Did you call the Officers?

"A. I believe Lynch called the Officers. We *took* him out of the central probation room and *brought* him over to my side and *had* him sit down. He wanted to call his Attorney. I let him call his Attorney. As a matter of fact, he was on the phone to you whenever the Officers came." (Emphasis Supplied.)

It was then developed that while waiting for the police to "pick him up" Storey had "this conversation" with the appellant. Over objection that appellant was effectively in custody and under arrest and that any statement was inadmissible, Storey was permitted to relate that the appellant had told him he (the appellant) had stolen some money from the place of business where he worked. There was a showing that no warnings as to his rights were given to the appellant prior to his statement.

■ Custodial interrogation was defined in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), as "questioning initiated by law enforcement officers after

a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." And such custodial interrogation is not limited to police station house interrogation. *Mathis v. United States*, 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1968); *Orozco v. Texas*, 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed.2d 311 (1969).

In *Ancira v. State*, 516 S.W.2d 924 (Tex. Cr.App.1974), this court cited with approval *United States v. Phelps*, 443 F.2d 246 (5th Cir. 1971), where it was stated:

" . . . [w]e have noted several significant factors which should be considered in determining whether or not a defendant is in custody. For example, probable cause to arrest, subjective intent of the police, focus of the investigation, and subjective belief of the defendant have all been deemed relevant."

■ In light of the record before us it is clear that while the probation officer Storey may not have formally arrested the appellant, the appellant was in fact detained while awaiting the arrival of the arresting officers and was deprived of his freedom of action in a significant way. The record reflects appellant's understanding of his situation as he asked and was permitted to call his attorney to whom he was talking when the arresting officers arrived. Prior thereto, he had made the incriminating statement to Storey without any warnings being given.

It is true that *Miranda* does not bar volunteered statements, *Taylor v. State*, 420 S.W.2d 601 (Tex.Cr.App.1967), but nothing in this record shows that it was volunteered rather than being elicited by Storey after the appellant was detained. If it is the State's position that the statement was volunteered, then in light of the objection it was incumbent upon the State to so show.

It is true that in *Cunningham v. State*, 488 S.W.2d 117 (Tex.Cr.App.1972), this court held that an admission by a probationer to his probation officers, even as a result of questioning during a reporting session, was not an in-custody interrogation

condemned by *Miranda* under the circumstances there presented. See also *Kirven v. State*, 492 S.W.2d 468 (Tex.Cr.App.1973). However, in footnote # 3 of *Cunningham* at p. 120 the court cautioned:

"It is not our intention to hold that *Miranda* can never be applicable to any contact, interview, interrogation, visit, etc. between a probationer and his probation officer regardless of the circumstances." *State v. Lekas*, 201 Kan. 579, 442 P.2d 11 (1968).

It appears that the statement was admitted in violation of *Miranda*.

Even if it can be argued that *Miranda* cannot be so interpreted, we are still left with the provisions of Article 38.22, Vernon's Ann.C.C.P., which prohibit the admissibility of oral statements while in custody unless such statements are found to be true "which conduce to establish his guilt, such as the finding of secreted or stolen property, or the instrument with which he states the offense was committed." Sec. (1)(e). This statute would also have called for the exclusion of the statement. There being no showing that the statement was admissible as exception to Article 38.22, supra, or *Miranda*, the court erred in admitting the same.

Since it is clear from the opinion on original submission that the appellant's statement to the polygraph operator was likewise inadmissible, the State's motion for rehearing is denied.

DOUGLAS, Judge (dissenting).

Today the majority creates a new precedent without discussing or overruling precedents which have been the rule ever since this Court was created. See the references to Branch's Annotated Penal Code, infra. The new overly protective rule prevents the introduction of volunteered statements to a probation officer by a probationer when he is not under arrest.

The order revoking probation was reversed on the ground that appellant was under arrest when he made statements admitting his guilt to officers. The last statement made to the probation officer was made while he was not in custody.

Appellant went "on his own" to see his probation officer and voluntarily told him that he had committed theft at a service station where he was employed. When one makes volunteered statements, failure to give the warnings required by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, does not render the statements inadmissible. *Bailey v. State*, 532 S.W.2d 316 (Tex.Cr.App.1976); *Adami v. State*, 524 S.W.2d 693 (Tex.Cr.App.1975).

The evidence that the trial judge heard will be set out to see if an abuse of discretion has been shown. All of the evidence favorable to the finding of the trial judge should be considered. At the outset, it should be noted that the emphasized part of the testimony of Beavers that appellant had agreed "to work the shortage out" does not detract from the fact that appellant committed the theft. At least it shows that appellant acknowledged the shortage although it may not show that he caused it.

H. E. Beavers testified that he was employed by Geneco Corporation as a supervisor for several service stations in Dallas County. On June 19, 1975, it was discovered that money was missing from the station that appellant had operated for some two weeks. No "draw slip" for any amount had been made by appellant.

R. D. Lewis, a Dallas police officer assigned to the "I. D. Section of the Polygraph Examiner", testified that on June 21, "Investigator Crum of the Crimes Against Persons Bureau brought him (appellant) to me to give him an examination to see if he had anything to do with a theft at a service station." He then had an interview with appellant concerning the theft from Beavers' station. Lewis testified that he explained to appellant that he was not under arrest, and that appellant willingly and understandably signed a consent form reading:

"I understand that I am not under arrest at this time and that this examina-

tion is completely and wholly voluntary. I have not been threatened or promised anything in order to get me to consent to the taking of this examination. No violence has been used toward me in order to force me to consent to this examination.

(Signed) Richard Creeks"

Lewis testified next, over objection, that he and appellant then discussed the theft here involved, and that "Richard Creeks admitted to me verbally that he had taken sixty dollars of the hundred and thirteen dollar shortage on the 19th of June."

Reggie Storey, the probation officer, testified that on June 23rd he learned that appellant had been arrested for theft and had been released from custody and he had a warrant issued for his arrest for probation violation. On the 24th of June, appellant came to Storey's office "on his own." Storey did not arrest him, having been advised by his chief, "Do not stop him." However, Storey had notified officers and knew they were on the way to arrest appellant on the warrant Storey had requested. Storey testified that before appellant was arrested he admitted that he had "stolen some money from the place of business where he worked." Storey did not recall the date of the theft given by appellant.

In *Taylor v. State*, 420 S.W.2d 601 (Tex. Cr.App.1967), the conviction was for murder. The shooting occurred at 2:50 p.m. and shortly thereafter the sheriff arrived at the scene. Meanwhile, appellant had voluntarily arrived at the sheriff's courthouse office but no one was there. Taylor heard over a two-way radio at the office that the sheriff was on the way to Taylor's house. Taylor could not operate the radio and he went to another office in the courthouse and asked a woman to call the sheriff and tell him that he (Taylor) was not running. Taylor then went back to the sheriff's office and waited. When the sheriff arrived between 3:15 and 3:30 p.m. Taylor stood up and said: "Well, I told them I was going to do it." The sheriff then pointed to a 30–30 rifle which was later shown to be the mur-

der weapon and Taylor said it belonged to him but warned the sheriff to be careful because it was loaded.

The sheriff testified that he had not arrested Taylor prior to the complained of statements. In the *Taylor* case this Court noted from *Miranda v. Arizona*, supra, the following:

" 'There is no requirement that police stop a person who enters a police station and states that he wishes to confess to a crime, or a person who calls the police to offer a confession or any other statement he desires to make. Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today.' "

In Taylor's case, he knew that the sheriff was looking for him for the purpose of arresting him. In the present case appellant did not know that the probation officer planned to arrest him. He was at liberty when the statements were made. It is true that the probation officer would not have allowed appellant to leave. The same was true in Taylor's case because he knew the sheriff was looking for him because of the murders he had committed. This Court held Taylor's statements to be admissible because they were volunteered. The statements in the present case were volunteered. From the *Taylor* case we see that volunteered statements may be received in evidence even though the sheriff was about to make an arrest and the person making the statement knew that his arrest was imminent. In the present case appellant did not know that he was about to be arrested and because of this his statement could have been more freely given than that in the *Taylor* case.

In *Cunningham v. State*, 488 S.W.2d 117 (Tex.Cr.App.1972), this Court held that an admission by a probationer to the probation officer, even as a result of questioning during a reporting session, was not an in-custody confession condemned in *Miranda v. Arizona*, supra. It was noted that this sort of questioning " '. . . was hardly the sort of incommunicado, police-dominated atmo-

sphere of custodial interrogation and overbearing of the subject's will at which the Miranda rule was aimed.'" In the present case there was no police dominated atmosphere. His will was not overcome because a warrant for his arrest had been issued, because he did not know that such a warrant was outstanding and he had previously told the probation officer that he had been arrested for the theft.

The correct rule is found in 1 Branch's Ann.P.C.2d, Section 85, confinement or custody:

"Whatever be the intentions of the officer, if he had not arrested defendant and defendant was not apprised of his intentions to do so at the time he made the statements, they are admissible. It is not the intention of the officer that governs. [Citations omitted]."

Another statement applicable to this case is found in the same section. It is:

"Although the officer would not have permitted defendant to depart, yet if defendant did not reasonably believe himself to be under arrest, proof of his unwarned confession is admissible. [Citations omitted]."

In *Malazzo v. State*, 165 Tex.Cr.R. 441, 308 S.W.2d 29 (1957), the county attorney was permitted to testify that the accused had made bond and he came to his office and made the statement that he was involved in the burglary; that he went into the house and helped move the television and load it in the car and carry it away. This Court held no error was shown because of the facts showing that he was not under arrest at that time.

Appellant next contends that the evidence is insufficient to support the order revoking probation.

Appellant's identification as the probationer in the case was established by the testimony of the probation officer. The testimony given by Beavers of the theft of money from the service station together with probation officer Storey's testimony of appellant's oral confession and the admission of the shortage by appellant sufficiently support the findings and order of the trial court. It is not necessary to pass upon the question of the confession to the polygraph operator. No abuse of discretion has been shown.

The judgment should be affirmed.

GUPTON, J., joins in this dissent.