02-10-477-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-10-00477-CR

 

 


 
 
 Amanda Jodale Huff
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

FROM Criminal
District Court No. 1 OF Tarrant COUNTY

----------

MEMORANDUM
OPINION[1]

----------

I.  Introduction

          Appellant
Amanda Jodale Huff received deferred adjudication community supervision after
pleading guilty to possession of a controlled substance, namely
methamphetamine, in an amount more than one gram but less than four grams.[2]
 She appeals from the judgment adjudicating her guilt and sentencing her to
five years’ confinement.  In her sole point, Huff contends that she was denied
effective assistance of counsel because her trial counsel allegedly failed to
prepare for the adjudication hearing.  In that same point, Huff contends that
the trial court abused its discretion by allowing the State to introduce her
signed statement, made to her probation officer, in which Huff admits to using
methamphetamine twice in violation of the terms of her community supervision. 
We will affirm.

II.  Background

          Huff
pleaded guilty to the State’s possession charge on September 18, 2009.  The
State filed a petition to proceed to adjudication on July 23, 2010.  In its
petition, the State alleged: (1) that Huff tested positive for
methamphetamine on four separate occasions; (2) that Huff admittedly used
methamphetamine on two other occasions; (3) that Huff failed to provide
proof of employment to her probation officer; (4) that Huff submitted
diluted urine samples for testing on various dates; and (5) that Huff
failed to submit any urine samples for testing on three separate occasions.

          The
trial court held a portion of the adjudication hearing on Tuesday, October 12,
2010.  At that time, Huff’s trial counsel announced that he was not ready to
proceed because he believed that he and the State had agreed to reset the
hearing to a later date so that the State could file an amended petition.  It
appears from reading the petition, reading the transcript of the first hearing,
and reviewing the evidence presented at the hearing, that the State improperly
listed dates in paragraph one of its original petition and discussed resetting
the hearing with Huff’s trial counsel.  After discussion, the trial court, the
State, and Huff’s trial counsel agreed to bifurcate the hearing.  The first
half of the hearing occurred that same day.  The State questioned Doug Jones, probation
officer with Tarrant County Adult Probation.  In addition to identifying Huff
to the trial court, Jones testified that he had briefed Huff about the
conditions of her probation.  Both sides then questioned one of the State’s
witnesses, Andrew Fischinger, who is from out of state and the director of the
drug testing center that conducted multiple urinalysis tests on samples
provided by Huff as a condition of her community supervision.

Fischinger
testified that Huff tested positive for amphetamine and methamphetamine on
three separate occasions.  Fischinger also averred that Huff submitted diluted
urine samples on five other occasions.  Huff’s trial counsel questioned
Fischinger about several topics, including chain of custody, calibration of the
machines used to test urine samples, the types of things a person might
normally ingest that would dilute urine, and whether over-the-counter drugs
could result in a urine test registering positive for methamphetamine or
amphetamine.  The trial court then adjourned the hearing until the following
Thursday—October 14, 2010—so that Huff’s attorney could subpoena witnesses on
Huff’s behalf and so that both parties could fully question the State’s other
witnesses.

          At
the second hearing, Johnella Carter, one of Huff’s probation officers,
testified that she discussed with Huff that Huff had tested positive for
methamphetamine use in violation of terms of her community supervision. 
According to Carter, Huff admitted that she had used methamphetamine.  Huff
then signed a statement admitting to methamphetamine use on two separate
occasions.  Huff’s trial counsel objected to the admission of the signed
statement, alleging that the statement was obtained without Huff having been
given proper warnings.  The trial court overruled the objection, and the
statement was admitted into evidence.

          Kelly
Griffin, another of Huff’s probation officers, testified that Huff failed to
provide proof of employment and that she failed to submit required samples for
testing on three separate occasions.  Jennifer Huff, Huff’s sister and witness
called on Huff’s behalf, testified that she had never seen Huff “high on
something”; that if Huff were allowed to enroll in and complete a
drug-treatment program, she could live with her; and that she believed that
Huff became addicted to drugs because of the death of their mother.

          After
all witnesses testified, Huff’s counsel argued that the State failed to prove
the allegations in paragraph one because the alleged dates in the petition reflected
dates that were prior to Huff being on community supervision.  Huff’s counsel
also argued that some of the dates testified to by Fischinger did not match the
dates listed in the State’s petition, paragraph four, or that Fischinger did
not testify regarding some of the dates at all.  The trial court agreed with these
arguments.

          The
trial court found that the State failed to provide sufficient evidence of
paragraphs one, three, and portions of paragraph five.  But the trial court
found that the State proved paragraphs two, four, and the remaining portions of
paragraph five.  The trial court proceeded to adjudicate Huff guilty and
sentenced her to five years’ incarceration.  This appeal followed.

III.  Discussion

          In
her sole point, Huff argues that she was denied effective assistance of counsel
because trial counsel allegedly failed to prepare properly for the hearing and
that the trial court abused its discretion by allowing the State to introduce
into evidence her signed statement.

          A.      Effective
Assistance of Counsel

          In
part of her single point, Huff argues that because her trial counsel announced
to the trial court that he was not prepared to go to trial on the Tuesday that
the hearing began, her counsel failed to investigate and prepare for trial;
thus, Huff believes she received ineffective assistance of counsel at the
hearing.

          To
establish ineffective assistance of counsel, an appellant must show by a
preponderance of the evidence that her counsel’s representation fell below the
standard of prevailing professional norms and that there is a reasonable
probability that, but for counsel’s deficiency, the result of the trial would
have been different.  Strickland v. Washington, 466 U.S. 668, 687, 104
S. Ct. 2052, 2064 (1984); Salinas v. State, 163 S.W.3d 734, 740
(Tex. Crim. App. 2005); Mallett v. State, 65 S.W.3d 59, 62–63 (Tex.
Crim. App. 2001); Thompson v. State, 9 S.W.3d 808, 812 (Tex. Crim. App.
1999).

          In
evaluating the effectiveness of counsel under the first prong, we look to the
totality of the representation and the particular circumstances of each case.  Thompson,
9 S.W.3d at 813.  The issue is whether counsel’s assistance was reasonable
under all the circumstances and prevailing professional norms at the time of
the alleged error.  See Strickland, 466 U.S. at 688–89, 104 S. Ct.
at 2065.  Review of counsel’s representation is highly deferential, and the
reviewing court indulges a strong presumption that counsel’s conduct fell
within a wide range of reasonable representation.  Salinas, 163 S.W.3d
at 740; Mallett, 65 S.W.3d at 63.  A reviewing court will rarely be in a
position on direct appeal to fairly evaluate the merits of an ineffective
assistance claim.  Thompson, 9 S.W.3d at 813–14.  “’In the majority of
cases, the record on direct appeal is undeveloped and cannot adequately reflect
the motives behind trial counsel’s actions.’”  Salinas, 163 S.W.3d at
740 (quoting Mallett, 65 S.W.3d at 63).  To overcome the presumption of
reasonable professional assistance, “’any allegation of ineffectiveness must be
firmly founded in the record, and the record must affirmatively demonstrate the
alleged ineffectiveness.’”  Id. (quoting Thompson, 9
S.W.3d at 813).

          The
second prong of Strickland requires a showing that counsel’s errors were so
serious that they deprived the defendant of a fair and reliable trial.  Strickland,
466 U.S. at 687, 104 S. Ct. at 2064.  In other words, an appellant must
show there is a reasonable probability that, but for counsel’s unprofessional
errors, the result of the proceeding would have been different.  Id.
at 694, 104 S. Ct. at 2068.  A reasonable probability is a probability
sufficient to undermine confidence in the outcome.  Id.  The
ultimate focus of our inquiry must be on the fundamental fairness of the
proceeding in which the result is being challenged.  Id. at 697,
104 S. Ct. at 2070.

          Huff
contends that the record demonstrates her trial counsel’s lack of preparation
to proceed on the State’s petition when he told the trial court that he was not
prepared to proceed the day the hearing was set.  But the context of this
record defies Huff’s characterization of counsel’s statements to the trial
court.  The record indicates that Huff’s counsel was not unprepared to proceed
with litigating the State’s petition in the sense that he had either not
discussed the petition with Huff, was unaware of its allegations, or had not
prepared at all for the hearing.  Rather, the lack of preparation expressed by
counsel only concerned his belief that the State agreed to ask the trial court
to reset the hearing and his desire to bring planned witnesses to trial.  After
a discussion with the trial court and the State, Huff’s counsel agreed to
proceed in the bifurcated manner in which the trial court conducted the
hearing.  It appears to this court that counsel’s questioning of witnesses on
both days fell within a wide range of reasonable representation and that counsel
in fact argued successfully that the State had failed to prove multiple
allegations alleged in the petition to proceed to adjudication.  Accordingly,
the record before us is insufficient to show that Huff’s attorney’s actions
were unreasonable or fell below the standard of prevailing professional norms. 
See Strickland, 466 U.S. at 687, 104 S. Ct. at 2064.  Because Huff
cannot show that her attorney was deficient, she cannot demonstrate that her
attorney was ineffective under Strickland.  Thus, we overrule this
portion of her sole point.

          B.      Statements
Made by Huff to her Probation Officer

          In
the remainder of her sole point, Huff contends that the trial court committed
reversible error by allowing the State to introduce into evidence a signed
statement made to her probation officer that she had twice used methamphetamine
in violation of the terms of her community supervision.  Specifically, Huff
contends that because she in effect made incriminating statements to her
probation officer, her probation officer should have given her warnings under
article 38.22 of the Texas Code of Criminal Procedure.  See Tex. Code
Crim. Proc. art. 38.22. (West 2005).  Thus, according to Huff, because her
statements were unwarned, her signed statement should not have been allowed
into evidence over her objection.

          The
decision to proceed to an adjudication of guilt and revoke deferred
adjudication community supervision is reviewable in the same manner as a
revocation of ordinary community supervision.  Id. art. 42.12, § 5(b)
(West Supp. 2010).  We review an order revoking community supervision under an
abuse of discretion standard.  Cardona v. State, 665 S.W.2d 492, 493
(Tex. Crim. App. 1984); Jackson v. State, 645 S.W.2d 303, 305 (Tex.
Crim. App. 1983).  In a revocation proceeding, the State must prove by a
preponderance of the evidence that the defendant is the same individual who is
named in the judgment and order of community supervision, and then must prove
that the defendant violated a term of community supervision as alleged in the
motion to revoke.  Cobb v. State, 851 S.W.2d 871, 873–74 (Tex. Crim.
App. 1993).

          In
a community supervision revocation hearing, the trial judge is the sole trier
of fact and determines the credibility of the witnesses and the weight to be
given their testimony.  Allbright v. State, 13 S.W.3d 817, 818–819 (Tex.
App.—Fort Worth 2000, pet. ref’d).  We review the evidence in the light most
favorable to the trial court’s ruling.  Cardona, 665 S.W.2d at 493; Garrett
v. State, 619 S.W.2d 172, 174 (Tex. Crim. App. [Panel Op.] 1981); Allbright,
13 S.W.3d at 818.  If the State fails to meet its burden of proof, the trial
court abuses its discretion in revoking the community supervision.  Cardona,
665 S.W.2d at 493–94.  Proof by a preponderance of the evidence of any one of
the alleged violations of the conditions of community supervision is sufficient
to support a revocation order.  Moore v. State, 605 S.W.2d 924, 926
(Tex. Crim. App. [Panel Op.] 1980); Sanchez v. State, 603 S.W.2d 869,
871 (Tex. Crim. App. [Panel Op.] 1980); Leach v. State, 170 S.W.3d 669,
672 (Tex. App.—Fort Worth 2005, pet. ref’d).

          The
general rule is that a “defendant’s admission of a violation to a probation
officer, by itself, is sufficient to support a revocation.”  Anthony v.
State, 962 S.W.2d 242, 246 (Tex. App.—Fort Worth 1998, no pet.) (citing
Cunningham v. State, 488 S.W.2d 117, 119–21 (Tex. Crim. App. 1972), and Holmes
v. State, 752 S.W.2d 700, 701 (Tex. App.—Waco 1988, no pet.)).  The only
time a probation officer is required to give article 38.22 warnings is when “police
and [the probation officer] are investigating a criminal offense in tandem.”  Wilkerson
v. State, 173 S.W.3d 521, 529 (Tex. Crim. App. 2005).  And the burden to
prove that a probation officer is acting on behalf of the State for custodial
purposes in relation to article 38.22 warnings is on the defendant.  Id.

          In
this case, Huff presented no evidence to the trial court that her probation
officer and the police were “investigating a criminal offense in tandem.”  Id. 
Thus, the trial court did not abuse its discretion by allowing the State to
introduce into evidence Huff’s signed statement to her probation officer that
she had twice used methamphetamine in violation of the conditions of her
community supervision.  Furthermore, Huff’s statement to her probation officer
that she violated the terms of her community supervision served as sufficient
evidence to support the trial court’s ruling to proceed to adjudication.  See
Anthony, 962 S.W.2d at 246.  We overrule the remainder of Huff’s sole
point.

IV.  Conclusion

          Having
overruled Huff’s sole point in its entirety, we affirm the trial court’s
judgment.

 

 

BILL MEIER
JUSTICE

 

PANEL:  MCCOY, MEIER, and GABRIEL, JJ.

 

DO NOT PUBLISH

Tex. R. App.
P. 47.2(b)

 

DELIVERED: 
July 14, 2011









[1]See Tex. R. App. P. 47.4.





[2]See Tex. Health
& Safety Code Ann. § 481.115(a), (c) (West 2010).