

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-10-00477-CR

AMANDA JODALE HUFF          APPELLANT

V.

THE STATE OF TEXAS          STATE

----------

FROM CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

## I. INTRODUCTION

Appellant Amanda Jodale Huff received deferred adjudication community supervision after pleading guilty to possession of a controlled substance, namely methamphetamine, in an amount more than one gram but less than four grams.[2] She appeals from the judgment adjudicating her guilt and sentencing her to five

---

[1]*See* Tex. R. App. P. 47.4.

[2]*See* Tex. Health & Safety Code Ann. § 481.115(a), (c) (West 2010).

years' confinement. In her sole point, Huff contends that she was denied effective assistance of counsel because her trial counsel allegedly failed to prepare for the adjudication hearing. In that same point, Huff contends that the trial court abused its discretion by allowing the State to introduce her signed statement, made to her probation officer, in which Huff admits to using methamphetamine twice in violation of the terms of her community supervision. We will affirm.

## II. BACKGROUND

Huff pleaded guilty to the State's possession charge on September 18, 2009. The State filed a petition to proceed to adjudication on July 23, 2010. In its petition, the State alleged: (1) that Huff tested positive for methamphetamine on four separate occasions; (2) that Huff admittedly used methamphetamine on two other occasions; (3) that Huff failed to provide proof of employment to her probation officer; (4) that Huff submitted diluted urine samples for testing on various dates; and (5) that Huff failed to submit any urine samples for testing on three separate occasions.

The trial court held a portion of the adjudication hearing on Tuesday, October 12, 2010. At that time, Huff's trial counsel announced that he was not ready to proceed because he believed that he and the State had agreed to reset the hearing to a later date so that the State could file an amended petition. It appears from reading the petition, reading the transcript of the first hearing, and reviewing the evidence presented at the hearing, that the State improperly listed

2

dates in paragraph one of its original petition and discussed resetting the hearing with Huff's trial counsel. After discussion, the trial court, the State, and Huff's trial counsel agreed to bifurcate the hearing. The first half of the hearing occurred that same day. The State questioned Doug Jones, probation officer with Tarrant County Adult Probation. In addition to identifying Huff to the trial court, Jones testified that he had briefed Huff about the conditions of her probation. Both sides then questioned one of the State's witnesses, Andrew Fischinger, who is from out of state and the director of the drug testing center that conducted multiple urinalysis tests on samples provided by Huff as a condition of her community supervision.

Fischinger testified that Huff tested positive for amphetamine and methamphetamine on three separate occasions. Fischinger also averred that Huff submitted diluted urine samples on five other occasions. Huff's trial counsel questioned Fischinger about several topics, including chain of custody, calibration of the machines used to test urine samples, the types of things a person might normally ingest that would dilute urine, and whether over-the-counter drugs could result in a urine test registering positive for methamphetamine or amphetamine. The trial court then adjourned the hearing until the following Thursday—October 14, 2010—so that Huff's attorney could subpoena witnesses on Huff's behalf and so that both parties could fully question the State's other witnesses.

At the second hearing, Johnella Carter, one of Huff's probation officers, testified that she discussed with Huff that Huff had tested positive for methamphetamine use in violation of terms of her community supervision. According to Carter, Huff admitted that she had used methamphetamine. Huff then signed a statement admitting to methamphetamine use on two separate occasions. Huff's trial counsel objected to the admission of the signed statement, alleging that the statement was obtained without Huff having been given proper warnings. The trial court overruled the objection, and the statement was admitted into evidence.

Kelly Griffin, another of Huff's probation officers, testified that Huff failed to provide proof of employment and that she failed to submit required samples for testing on three separate occasions. Jennifer Huff, Huff's sister and witness called on Huff's behalf, testified that she had never seen Huff "high on something"; that if Huff were allowed to enroll in and complete a drug-treatment program, she could live with her; and that she believed that Huff became addicted to drugs because of the death of their mother.

After all witnesses testified, Huff's counsel argued that the State failed to prove the allegations in paragraph one because the alleged dates in the petition reflected dates that were prior to Huff being on community supervision. Huff's counsel also argued that some of the dates testified to by Fischinger did not match the dates listed in the State's petition, paragraph four, or that Fischinger

4

did not testify regarding some of the dates at all. The trial court agreed with these arguments.

The trial court found that the State failed to provide sufficient evidence of paragraphs one, three, and portions of paragraph five. But the trial court found that the State proved paragraphs two, four, and the remaining portions of paragraph five. The trial court proceeded to adjudicate Huff guilty and sentenced her to five years' incarceration. This appeal followed.

### III. DISCUSSION

In her sole point, Huff argues that she was denied effective assistance of counsel because trial counsel allegedly failed to prepare properly for the hearing and that the trial court abused its discretion by allowing the State to introduce into evidence her signed statement.

### A. Effective Assistance of Counsel

In part of her single point, Huff argues that because her trial counsel announced to the trial court that he was not prepared to go to trial on the Tuesday that the hearing began, her counsel failed to investigate and prepare for trial; thus, Huff believes she received ineffective assistance of counsel at the hearing.

To establish ineffective assistance of counsel, an appellant must show by a preponderance of the evidence that her counsel's representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have

been different.  *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005); *Mallett v. State*, 65 S.W.3d 59, 62–63 (Tex. Crim. App. 2001); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).

In evaluating the effectiveness of counsel under the first prong, we look to the totality of the representation and the particular circumstances of each case. *Thompson*, 9 S.W.3d at 813.  The issue is whether counsel's assistance was reasonable under all the circumstances and prevailing professional norms at the time of the alleged error.  *See Strickland*, 466 U.S. at 688–89, 104 S. Ct. at 2065. Review of counsel's representation is highly deferential, and the reviewing court indulges a strong presumption that counsel's conduct fell within a wide range of reasonable representation.  *Salinas*, 163 S.W.3d at 740; *Mallett*, 65 S.W.3d at 63.  A reviewing court will rarely be in a position on direct appeal to fairly evaluate the merits of an ineffective assistance claim.  *Thompson*, 9 S.W.3d at 813–14.  "'In the majority of cases, the record on direct appeal is undeveloped and cannot adequately reflect the motives behind trial counsel's actions.'" *Salinas*, 163 S.W.3d at 740 (*quoting Mallett*, 65 S.W.3d at 63).  To overcome the presumption of reasonable professional assistance, "'any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness.'"  *Id.* (*quoting Thompson*, 9 S.W.3d at 813).

The second prong of Strickland requires a showing that counsel's errors were so serious that they deprived the defendant of a fair and reliable trial. *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. In other words, an appellant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694, 104 S. Ct. at 2068. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* The ultimate focus of our inquiry must be on the fundamental fairness of the proceeding in which the result is being challenged. *Id.* at 697, 104 S. Ct. at 2070.

Huff contends that the record demonstrates her trial counsel's lack of preparation to proceed on the State's petition when he told the trial court that he was not prepared to proceed the day the hearing was set. But the context of this record defies Huff's characterization of counsel's statements to the trial court. The record indicates that Huff's counsel was not unprepared to proceed with litigating the State's petition in the sense that he had either not discussed the petition with Huff, was unaware of its allegations, or had not prepared at all for the hearing. Rather, the lack of preparation expressed by counsel only concerned his belief that the State agreed to ask the trial court to reset the hearing and his desire to bring planned witnesses to trial. After a discussion with the trial court and the State, Huff's counsel agreed to proceed in the bifurcated manner in which the trial court conducted the hearing. It appears to this court that counsel's questioning of witnesses on both days fell within a wide range of

7

reasonable representation and that counsel in fact argued successfully that the State had failed to prove multiple allegations alleged in the petition to proceed to adjudication. Accordingly, the record before us is insufficient to show that Huff's attorney's actions were unreasonable or fell below the standard of prevailing professional norms. *See Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. Because Huff cannot show that her attorney was deficient, she cannot demonstrate that her attorney was ineffective under *Strickland*. Thus, we overrule this portion of her sole point.

### B. Statements Made by Huff to her Probation Officer

In the remainder of her sole point, Huff contends that the trial court committed reversible error by allowing the State to introduce into evidence a signed statement made to her probation officer that she had twice used methamphetamine in violation of the terms of her community supervision. Specifically, Huff contends that because she in effect made incriminating statements to her probation officer, her probation officer should have given her warnings under article 38.22 of the Texas Code of Criminal Procedure. *See* Tex. Code Crim. Proc. art. 38.22. (West 2005). Thus, according to Huff, because her statements were unwarned, her signed statement should not have been allowed into evidence over her objection.

The decision to proceed to an adjudication of guilt and revoke deferred adjudication community supervision is reviewable in the same manner as a revocation of ordinary community supervision. *Id.* art. 42.12, § 5(b) (West Supp.

8

2010). We review an order revoking community supervision under an abuse of discretion standard. *Cardona v. State*, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984); *Jackson v. State*, 645 S.W.2d 303, 305 (Tex. Crim. App. 1983). In a revocation proceeding, the State must prove by a preponderance of the evidence that the defendant is the same individual who is named in the judgment and order of community supervision, and then must prove that the defendant violated a term of community supervision as alleged in the motion to revoke. *Cobb v. State*, 851 S.W.2d 871, 873–74 (Tex. Crim. App. 1993).

In a community supervision revocation hearing, the trial judge is the sole trier of fact and determines the credibility of the witnesses and the weight to be given their testimony. *Allbright v. State*, 13 S.W.3d 817, 818–819 (Tex. App.—Fort Worth 2000, pet. ref'd). We review the evidence in the light most favorable to the trial court's ruling. *Cardona*, 665 S.W.2d at 493; *Garrett v. State*, 619 S.W.2d 172, 174 (Tex. Crim. App. [Panel Op.] 1981); *Allbright*, 13 S.W.3d at 818. If the State fails to meet its burden of proof, the trial court abuses its discretion in revoking the community supervision. *Cardona*, 665 S.W.2d at 493–94. Proof by a preponderance of the evidence of any one of the alleged violations of the conditions of community supervision is sufficient to support a revocation order. *Moore v. State*, 605 S.W.2d 924, 926 (Tex. Crim. App. [Panel Op.] 1980); *Sanchez v. State*, 603 S.W.2d 869, 871 (Tex. Crim. App. [Panel Op.] 1980); *Leach v. State*, 170 S.W.3d 669, 672 (Tex. App.—Fort Worth 2005, pet. ref'd).

The general rule is that a "defendant's admission of a violation to a probation officer, by itself, is sufficient to support a revocation." *Anthony v. State*, 962 S.W.2d 242, 246 (Tex. App.—Fort Worth 1998, no pet.) (*citing Cunningham v. State*, 488 S.W.2d 117, 119–21 (Tex. Crim. App. 1972), and *Holmes v. State*, 752 S.W.2d 700, 701 (Tex. App.—Waco 1988, no pet.)). The only time a probation officer is required to give article 38.22 warnings is when "police and [the probation officer] are investigating a criminal offense in tandem." *Wilkerson v. State*, 173 S.W.3d 521, 529 (Tex. Crim. App. 2005). And the burden to prove that a probation officer is acting on behalf of the State for custodial purposes in relation to article 38.22 warnings is on the defendant. *Id.*

In this case, Huff presented no evidence to the trial court that her probation officer and the police were "investigating a criminal offense in tandem." *Id.* Thus, the trial court did not abuse its discretion by allowing the State to introduce into evidence Huff's signed statement to her probation officer that she had twice used methamphetamine in violation of the conditions of her community supervision. Furthermore, Huff's statement to her probation officer that she violated the terms of her community supervision served as sufficient evidence to support the trial court's ruling to proceed to adjudication. *See Anthony*, 962 S.W.2d at 246. We overrule the remainder of Huff's sole point.

## IV. Conclusion

Having overruled Huff's sole point in its entirety, we affirm the trial court's judgment.

BILL MEIER
JUSTICE

PANEL:  MCCOY, MEIER, and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  July 14, 2011